Bingham McCutchen LLP
DONN P. PICKETT (SBN 72257)
donn.pickett@bingham.com
CHARLENE S. SHIMADA (SBN 91407)
charlene.shimada@bingham.com
JOHN D. PERNICK (SBN 155468)
john.pernick@bingham.com
ADRIENNE L. TACLAS (SBN 211232)
adrienne.taclas@bingham.com
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286

Attorneys for Defendants
Lehman Brothers Inc. and J.P. Morgan Securities Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SHORETEL, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS. | Case No. CV 08 0271 CRB<br><br>**DEFENDANTS LEHMAN BROTHERS INC. AND J.P. MORGAN SECURITIES INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  November 7, 2008<br>Time:  10:00 a.m.<br>Courtroom:  8<br>Judge:  Hon. Charles R. Breyer |

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that on November 7, 2008 at 10:00 a.m., in the Courtroom of the Honorable Charles R. Breyer, United States Courthouse, Courtroom 8, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Lehman Brothers Inc. and J.P. Morgan Securities Inc. (collectively, the "Underwriter Defendants") will move this Court to dismiss the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint"). This motion is brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on the grounds that Plaintiffs have failed to plead a claim against the Underwriter Defendants with particularity and otherwise have failed to state a cause of action on which relief can be granted. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, and the ShoreTel Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint, Memorandum of Points and Authorities, Request for Judicial Notice in Support of ShoreTel Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint ("RJN") and Declaration of Jennifer L. Kelly in Support of ShoreTel Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint ("Kelly Decl."), the argument of counsel, all pleadings, records and papers on file herein, and such other matters that may be presented to the Court.

**ISSUES TO BE DECIDED**

Whether Plaintiffs' claims under Section 11 of the 1933 Securities Act should be dismissed because:

    (a) Plaintiffs have failed to identify any actionable misrepresentation or omission by the Underwriter Defendants;

    (b) Plaintiffs have failed to plead enough facts to give rise to a plausible basis for relief;

    (c) on its face, the Complaint shows that Underwriter Defendants have an absolute negative causation defense; and

    (d) Plaintiffs have failed to plead facts with the particularity required by Rule 9(b).

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

III. PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS ................................................................ 3

IV. PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED FACTS SHOWING LOSS CAUSATION ......... 5

V. PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE IT DOES NOT SATISFY RULE 9(B) ....................................................................... 9

VI. CONCLUSION ................................................................................................... 10

ii

DEFENDANTS LEHMAN BROTHERS INC. AND J.P. MORGAN SECURITIES INC.'S
MOTION TO DISMISS, CASE NO. CV 08 0271 CRB

# TABLE OF AUTHORITIES

Page(s)

Cases

*Belodoff v. Netlist, Inc.*, No. 07-00677, 2008 U.S. Dist. LEXIS 45289 (C.D. Cal. May 30, 2008) .................................................................................................................. 4, 9

*In re Alamosa Holdings, Inc.*, 382 F.Supp.2d 832 (N.D. Tex. 2005) ................................... 5, 7, 8

*In re Convergent Techs. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991) ...................................... 4

*In re DDi Corp. Sec. Litig.*, No. 03-7063, 2005 U.S. Dist. LEXIS 1056 (C.D. Cal. Jan. 7, 2005) ........................................................................................................................... 9

*In re DNAP Sec. Litig.*, No. 99-00048, 2000 U.S. Dist. LEXIS 13482 (N.D. Cal. Sept. 13, 2000) ........................................................................................................................... 5

*In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006) ............................................................................................................. 4, 9

*In re Dreamworks Animation SKG, Inc. Sec. Litig.*, No. 05-03966, 2006 U.S. Dist. LEXIS 24456 (C.D. Cal. Apr. 12, 2006) ....................................................................... 3

*In re Fortune Sys. Sec. Litig.*, 680 F.Supp. 1360 (N.D. Cal. 1987) ................................... 5

*In re McKesson HBOC, Inc. Sec. Litig*, 126 F.Supp.2d 1248 (N.D. Cal. 2000) ............... 5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d 243 (S.D.N.Y. 2003) ....................................................................................................... 5, 6

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ....................................... 3, 9, 10

*In re Syntex Corp. Sec. Litig.*, No. 92-20548, 1993 U.S. Dist. LEXIS 20420 (N.D. Cal. Sept. 1, 1993) ............................................................................................................... 4

*In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ..................................................... 4

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ............................................. 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, No. 06-55826, 2008 U.S. App. LEXIS 15935 (9th Cir. July 25, 2008) ...................................................................................... 6, 7

*Stack v. Lobo*, No. 95-20049, 1995 U.S. Dist. LEXIS 19966 (N.D. Cal. Apr. 19, 1995) ............. 4

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ....................................... 3

*Weisbuch v. County of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) ................................. 6

DEFENDANTS LEHMAN BROTHERS INC. AND J.P. MORGAN SECURITIES INC.'S
MOTION TO DISMISS, CASE NO. CV 08 0271 CRB

1

# TABLE OF AUTHORITIES
(continued)

2                                                                                                                       Page(s)

3

## Statutes

4

Securities Act of 1933

5

    Section 11, 15 U.S.C. § 77(k) ................................................................................ *passim*

6

## Rules

7

Federal Rules of Civil Procedure

8

    Rule 9(b) ................................................................................................................ 9, 10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants Lehman Brothers Inc. and J.P. Morgan Securities Inc. (collectively, the "Underwriter Defendants"), the lead underwriters for the ShoreTel, Inc. initial public offering on July 3, 2007 ("IPO"), hereby join and incorporate by reference the arguments in the Motion to Dismiss filed by ShoreTel and the individual defendants ("collectively, the "ShoreTel Defendants"). The Underwriter Defendants also submit this memorandum in order to amplify and highlight arguments set forth in that Motion.

In particular, Plaintiffs' Section 11 claim should be dismissed because Plaintiffs' claim that misrepresentations appeared in the IPO Registration Statement is not, and cannot be, established by any factual allegations whatsoever. The Registration Statement consisted entirely of accurate historical information and a detailed presentation of risks ShoreTel would face in the future, including the risk that revenues might not continue to grow or might even decline.

Moreover, even if the Registration Statement contained one of the misrepresentations alleged by Plaintiffs, no Section 11 claim would exist. To the extent Plaintiffs suffered a loss in the value of their ShoreTel stock, that loss was the result of a January 7, 2008 press release announcing ShoreTel's failure to meet an earlier revenue estimate. The press release disclosing the revenue shortfall, which caused the decline in the value of Plaintiffs' ShoreTel stock, makes no reference either to the Registration Statement or to information related to the specific misrepresentations Plaintiffs charge Defendants with making. Therefore, these purported misrepresentations could not have affected the price of ShoreTel's stock or caused Plaintiffs' loss, and Defendants have a legally incontestable causation defense.

Plaintiffs have had over six months to present a valid claim. Even with their "confidential witnesses," Plaintiffs have not alleged facts sufficient to show either an actionable misstatement in the Registration Statement or a causal link between any such misstatement and the drop in ShoreTel's stock price following the January press release. The Court should bring Plaintiffs' fruitless prospecting to an end. The Complaint should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

The facts in this action are more fully set forth in the Motion to Dismiss filed by the ShoreTel Defendants. For purposes of this memorandum, the following facts must be reiterated. On January 7, 2008, ShoreTel issued a press release announcing preliminary results for Q2 2008, which ended December 31, 2007. Although the Company had achieved its second highest revenue quarter ever, revenue was expected to be in the range of $29.7 to $30.7 million, lower than the October 27, 2007 estimate of $32 to $35 million. Complaint, ¶ 52; Kelly Decl., Ex. C. The Company attributed the shortfall to lower than expected sales to new customers, as sales to existing customers had, in fact, grown. Kelly Decl., Ex. C. The Company further announced that both gross margin percentage and GAAP operating expenses were expected to be within the previously guided ranges. *Id.* Despite these results, ShoreTel's stock price fell over 50% on the day of the press release. Complaint, ¶ 54.

Shortly thereafter, this action was brought and Plaintiffs have now filed the instant Complaint alleging that they had suffered losses in their ShoreTel stock because of false statements in ShoreTel's Registration Statement. Yet, the press release that generated the decline in ShoreTel stock disclosed no information indicating that the Registration Statement contained false representations or even addressing the subject of the misrepresentations that Plaintiffs now alleged caused their losses in ShoreTel stock.

More specifically, the press release provided no information suggesting that the Registration Statement improperly failed to disclose, as Plaintiffs now charge, issues relating to ShoreTel's ability to collect from customers on sales that had been booked as revenue. Complaint, ¶¶ 22, 26, 32. Nor did the press release intimate, as Plaintiffs further allege, that the Registration Statement failed to disclose that ShoreTel had improperly accounted for demonstration products and bad debt (Complaint, ¶¶ 42, 44) and failed to warn investors of difficulties the Company was having monitoring its financial metrics. Complaint, ¶ 36. Indeed, the reality is that there is no factual basis for Plaintiffs' allegations that the Registration Statement contained these misrepresentations. And, even if misrepresentations did appear in the Registration Statement, they could not have caused any loss to Plaintiffs because the January 7,

1  2008 press release that precipitated the decline in the value of Plaintiffs' ShoreTel stock did not

2  disclose or even hint that the Registration Statement contained misrepresentations. Nor has there

3  been any other public disclosure of alleged misrepresentations in the Registration Statement that

4  could have caused losses in the value of Plaintiffs' ShoreTel stock.

**III.  PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS**

7  As explained more fully in the Motion to Dismiss filed by the ShoreTel

8  Defendants, Plaintiffs have failed to plead facts supporting their claim that the Registration

9  Statement contains any misrepresentations or omissions. According to Plaintiffs, ShoreTel's

10  purportedly aggressive sales tactics resulted in increased revenue at the time of the IPO that

11  misled investors about the Company's future prospects. But courts have consistently rejected

12  Section 11 claims based on allegations that a company has inflated pre-IPO sales through its

13  sales tactics. *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *In*

14  *re Dreamworks Animation SKG, Inc. Sec. Litig.*, No. 05-03966, 2006 U.S. Dist. LEXIS 24456, at

15  *10 (C.D. Cal. Apr. 12, 2006). Moreover, Plaintiffs' allegation that the Registration Statement's

16  statements of historical fact somehow implied that the Company's growth would continue as it

17  had in the past cannot stand in the face of the Registration Statement's express language warning

18  that ShoreTel's past "profitability and growth rates may not be indicative of our future

19  profitability or growth." Kelly Decl., Ex. A, at 7. Indeed, the Registration Statement specifically

20  identified the risk that future demand for its products was uncertain:

- "Demand for and market acceptance of enterprise IP telecommunication systems products and services are uncertain." *Id.* at 9.
- "Even if enterprise IP telecommunications systems become more widespread in the future, we cannot assure you that our products will attain broad market acceptance." *Id.* at 9.

26  ShoreTel did not even have an obligation to include these warnings in the

27  Registration Statement. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996)

28  (dismissing Section 11 claim and holding "companies are not required to predict the future"); *In*

1  *re VeriFone Sec. Litig.,* 11 F.3d 865, 869 (9th Cir. 1993) (defendants had no duty to "state the
2  'fact' that future prospects may not be as bright as past performance"); *In re Convergent Techs.*
3  *Sec. Litig.*, 948 F.2d 507, 516 (9th Cir. 1991) (no duty to disclose internal projections); *Belodoff*
4  *v. Netlist, Inc.*, No. 07-00677, 2008 U.S. Dist. LEXIS 45289, at *23 (C.D. Cal. May 30, 2008)
5  (nondisclosure of alleged downward trend in market not actionable because it amounted to a
6  "future trend projection" that defendants had no duty to disclose).  The fact that it did leaves
7  Plaintiffs with nothing to complain about.
8           The Registration Statement also fully disclosed the "material weaknesses" and
9  "significant deficiencies" in the Company's internal controls over financial reporting.  Kelly
10 Decl., Ex. A, at 45-46.  And, it warned investors that if the Company's remedial measures were
11 not effective "we may be unable to report our financial results accurately and prevent fraud."
12 Kelly Decl., Ex. A, at 13-14.  The Company was not required to say anything more.  *See, e.g., In*
13 *re Syntex Corp. Sec. Litig.*, No. 92-20548, 1993 U.S. Dist. LEXIS 20420, at *23 (N.D. Cal. Sept.
14 1, 1993) (company need not "denigrate itself").
15          Likewise, Plaintiffs' bare allegation that ShoreTel recognized revenue as soon as
16 contracts were signed (Complaint, ¶30), regardless of the circumstances, is insufficient to state a
17 claim based on purportedly improper revenue recognition.  *See, e.g., In re Daou Sys., Inc. Sec.*
18 *Litig.,* 411 F.3d 1006, 1016-17 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006) (to allege
19 revenue recognition improprieties, plaintiff must allege "such basic details" as the approximate
20 amount by which revenues and earnings were overstated, dates of the transactions, and identities
21 of the customers or employees involved); *Stack v. Lobo*, No. 95-20049, 1995 U.S. Dist. LEXIS
22 19966, at *13-14 (N.D. Cal. Apr. 19, 1995) (rejecting claim that company improperly recognized
23 revenue when it signed contracts, rather than when products shipped, where allegations did not
24 identify a single customer or sale for which the company prematurely recognized revenue).
25 Similarly without merit is their allegation that the Company's accurate statement as to the
26 amount of its bad debt reserve was somehow misleading.  Complaint, ¶ 42.  An accurate
27 statement of the bad debt allowance cannot serve as a basis for Section 11 liability.  *See Belodoff*,
28 2008 U.S. Dist. LEXIS 45289, at *20.

4

## IV. PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED FACTS SHOWING LOSS CAUSATION

Even if Plaintiffs' allegations of misrepresentations and omissions in the Registration Statement were supportable, Plaintiffs' Section 11 claim would still fail because the purported misrepresentations cited by Plaintiffs could not have caused them damage. Section 11(e) provides:

> If the defendant proves that any portion of all of such damages represents other than the depreciation of value of such security resulting from such part of the registration statement, with respect to which liability is asserted, . . . such portion of or all such damages shall not be recoverable.

15 U.S.C. § 77k(e). This language creates a legal defense to a Section 11 claim often referred to as "negative causation." *In re Alamosa Holdings, Inc.*, 382 F.Supp.2d 832, 865-866 (N.D. Tex. 2005). That is, a Section 11 plaintiff cannot recover damages unless the alleged misrepresentation actually caused the plaintiff's damages. *In re Fortune Sys. Sec. Litig.,* 680 F.Supp. 1360, 1365 (N.D. Cal. 1987) ("Put simply, loss causation requires that the damages [of the plaintiff] must be the direct result of the misrepresentations or omissions") (citation and internal quotation marks omitted).

Significantly, although negative causation is a defense that defendant must prove, courts regularly grant motions to dismiss on negative causation grounds where the lack of causation is apparent on the face of the complaint. *See, e.g., In re Alamosa Holdings*, *Inc.*, 382 F.Supp.2d at 866 (granting motion to dismiss Section 11 claim where "Plaintiffs' own pleadings demonstrate that any loss experienced by Plaintiffs could not be attributable to an alleged misrepresentation or omission from the Registration Statement"); *In re DNAP Sec. Litig.*, No. 99-00048, 2000 U.S. Dist. LEXIS 13482, at *8-9 (N.D. Cal. Sept. 13, 2000) ("Although loss causation is an affirmative defense [to a Section 11 claim] . . . in this case it is evident on the face of the complaint and thus may be raised on a motion to dismiss") (citation omitted); *In re McKesson HBOC, Inc. Sec. Litig*, 126 F.Supp.2d 1248, 1262 (N.D. Cal. 2000) (dismissal proper where "the complaint reveals that the Section 11 defendants have an absolute 'negative causation' defense pursuant to Section 11(e) . . ."); *In re Merrill Lynch & Co., Inc. Research*

5

1   *Reports Sec. Litig.*, 272 F.Supp.2d 243, 253-255 (S.D.N.Y. 2003) (granting motion to dismiss Section 11 complaint where stock price drop occurred before disclosure of allegedly concealed information). These rulings are consistent with the general rule that a complaint should be dismissed based on an affirmative defense if facts sufficient to establish the defense appear on the face of the complaint. "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783 n.1 (9th Cir. 1997); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (affirming grant of motion to dismiss where facts and dates alleged in complaint showed that claims were barred by statute of limitations).

In this case, negative causation is plain on the face of the Complaint. To prove loss causation, as the Ninth Circuit recently made clear in a 10b-5 action, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, No. 06-55826, 2008 U.S. App. LEXIS 15935 (9th Cir. July 25, 2008), it must be shown "that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Id*. at *26. Here, Plaintiffs allege that they were damaged by the purported misrepresentations in the Registration Statement when ShoreTel's stock price fell following the January 7 press release. But this press release merely announced that the Company would not meet its October 29 revenue projections. It did not disclose the existence of the misrepresentations alleged by Plaintiffs, nor is their existence apparent from anything contained in the press release. Therefore, the misrepresentations identified by Plaintiffs were not "revealed to the market" and cannot have caused the losses in the value of Plaintiffs' ShoreTel stock.

The facts of *Metzler* underscore Plaintiffs' inability to show loss causation. In *Metzler*, the plaintiff alleged that defendant Corinthian Colleges had fraudulently overstated its revenues by inflating its student enrollment numbers through manipulation of federal financial aid. *Id.* at *3-4. The plaintiff claimed that the fraud was revealed to the market in two steps. First, a June 24 newspaper article disclosed an investigation by the Department of Education into one of Corinthian's campuses. *Id.* at *14-15. Then, Corinthian issued a press release on August

6

1  2 announcing that it was cutting its revenue and earnings projections due to, among other things,
2  higher than anticipated attrition. *Id.* at *15-18. Plaintiff alleged that these two announcements
3  informed the market that Corinthian had engaged in widespread student enrollment and financial
4  aid fraud. But the Ninth Circuit rejected plaintiff's loss causation theory because it found
5  nothing in either the June 24 news article or the August 2 press release that disclosed the
6  enrollment or financial aid fraud the plaintiff alleged:

> Here, Metzler relies on the June 24 *Financial Times* story disclosing the DOE investigation at the Bryman campus and the August 2 earnings announcement. In doing so, Metzler fails to adequately plead loss causation. The [complaint] does not allege that the June 24 and August 2 announcements disclosed -- or even suggested -- to the market that Corinthian was manipulating student enrollment figures company-wide in order to procure excess federal funding, which is the fraudulent activity that Metzler contends forced down the stock that caused its losses. Neither the June 24 *Financial Times* story nor the August 2 press release regarding earnings can be reasonably read to reveal widespread financial aid manipulation by Corinthian, and the [complaint] does not otherwise adequately plead that these releases did so.

15  *Id*. at *27-28 (footnote omitted).
16         The Ninth Circuit's ruling in *Metzler* demonstrates how far Plaintiffs are from
17  being able to show loss causation in this case. In *Metzler,* the newspaper article disclosed an
18  investigation at least somewhat related to the alleged fraud. Yet, that still was not sufficient to
19  establish loss causation. ShoreTel's January 7 press release contains no discussion of anything
20  related to the accounting or sales practices issues that Plaintiffs contend were misrepresented in
21  the Registration Statement.
22         Indeed, review of the sequence of events shows that the losses Plaintiffs allegedly
23  suffered when ShoreTel's stock price fell following the January 7 press release were caused not
24  by the disclosure of any misstatement in the Registration Statement, but because the Company
25  announced that it would not meet its October 29 revenue projections. Thus, this case is very
26  much like *Alamosa Holdings* in which the court dismissed a Section 11 claim on negative
27  causation grounds. The *Alamosa Holdings* plaintiffs alleged that Alamosa Holdings' January
28  2001 registration statement contained misstatements regarding the wireless company's

7

MOTION TO DISMISS, CASE NO. CV 08 0271 CRB

1  subscriber numbers and revenues. 382 F.Supp.2d at 837. The plaintiffs alleged that they were
2  damaged by the misrepresentations when, on June 13, 2002, Alamosa Holdings issued a press
3  release lowering its projected subscriber growth for the second quarter of 2002 and the
4  company's stock price dropped by 11%. *See id*. at 838. The defendants moved to dismiss the
5  Section 11 claims on the grounds that none of the loss experienced by the plaintiffs following the
6  June 13, 2002 press release was related to the alleged misrepresentations in the registration
7  statement. Specifically, the press release addressed only subscriber additions in 2002, did not
8  mention the January 2001 registration statement, and did not address any operating results from
9  any prior period. *See id.* at 865-866. The court agreed with defendants that, because the
10 June 13, 2002 press release did not contain any statements or corrective disclosures relating to
11 the registration statement, "Plaintiffs' own pleadings demonstrate that any loss experienced by
12 Plaintiffs could not be attributable to an alleged misrepresentation or omission from the
13 Registration Statement. Plaintiffs' Section 11 claim is subject to the absolute negative causation
14 defense." *Id.* at 866.
15         Here, as in *Alamosa Holdings*, ShoreTel's January 7, 2008 press release did not
16 discuss ShoreTel's Registration Statement or correct anything relating to any of the alleged
17 misrepresentations that Plaintiffs claim were contained in the Registration Statement. Rather, as
18 in *Alamosa Holdings*, the January 7, 2008 press release informed investors that ShoreTel's sales
19 for the prior quarter would not be as high as previously predicted. And, as in *Alamosa Holdings*,
20 ShoreTel's stock price fell when investors learned that the Company would not meet those sales
21 estimates. However, those unfulfilled sales projections were contained in ShoreTel's
22 October 29, 2007 press release, not the Registration Statement. Moreover, the Registration
23 Statement warned investors that future demand for ShoreTel's products was uncertain and that,
24 because of the length of the sales cycle for ShoreTel's products, among other factors, "we may
25 have limited ability to forecast whether or in which period a sale will occur." Kelly Decl., Ex. A,
26 at 11. The Registration Statement also warned investors about the potential consequences to
27 their investment if the Company failed to meet sales forecasts: "[I]f sales forecasted for a
28 particular period do not occur in such period, our operating results for that period could be

1  substantially lower than anticipated and the market price of our common stock could decline."

2  *Id*.

3  Hence, Plaintiffs cannot show a causal link between any alleged misrepresentations in the Registration Statement and the decline in ShoreTel's stock price following the January 7, 2008 press release. This furnishes Defendants with an absolute negative causation defense, and the Complaint should be dismissed with prejudice as a consequence.

## V. PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED BECAUSE IT DOES NOT SATISFY RULE 9(B)

Rule 9(b)'s heightened pleading standard applies because Plaintiffs' Section 11 claim is grounded in fraud. *See In re Daou*, 411 F.3d at 1027-28; *Belodoff*, 2008 U.S. Dist. LEXIS 45289, at *13-17 (allegations of channel stuffing to inflate pre-IPO revenues sound in fraud). As in *Belodoff*, Plaintiffs accuse ShoreTel of engaging in acts designed to inflate revenue and prematurely recognizing revenue in violation of both GAAP and its own policies (Complaint, ¶¶ 23-32), leading to "exaggerated growth" (Complaint, ¶ 23) and "materially inflated" operating results (Complaint, ¶ 30). *See also* Complaint, ¶ 7 ("everything about how the company was run had to do with pushing for the IPO"); Complaint, ¶ 9 (alleging that Company's President and CEO pushed employees to "generate sales at any cost"); Complaint, ¶ 29 (alleging Defendants' "razor-sharp focus on achieving the goal of an IPO" led them to encourage improper tactics designed "to meet sales metrics"). These allegations necessarily imply an intent to overstate revenue and, in turn, an intent to deceive potential investors. *See Belodoff*, 2008 U.S. Dist. LEXIS 45289, at *17 ("[f]ailing to state known facts and attempting to create an inaccurate impression of future business are prototypical forms of intentional fraud"); *Stac*, 89 F.3d at 1403-05 (allegations that company artificially inflated results by offering companies "special terms," including discounts and exceptional rights of return, sounded in fraud); *see also In re DDi Corp. Sec. Litig.*, No. 03-7063, 2005 U.S. Dist. LEXIS 1056, at *63 (C.D. Cal. Jan. 7, 2005) (characterizing allegation that Prospectus was misleading because the company "artificially inflated" its revenues by prematurely shipping and booking orders as a type of "accounting fraud" subject to heightened pleading). The same goes for Plaintiffs'

1  allegation that the Company materially understated its bad debt reserves.  *Stac*, 89 F.3d 1408-
2  1409 (applying Rule 9(b) to allegations that company inflated results by understating bad debt
3  reserves).

4  Here, Plaintiffs make no attempt to satisfy Rule 9(b), because they make no effort
5  to allege the circumstances constituting the alleged fraud with particularity.  Indeed, other than
6  identifying them as the lead underwriters and stating that they were "responsible" for the
7  preparation of the Registration Statement, the Complaint contains no allegations about the
8  Underwriter Defendants' conduct or knowledge at all.  The Section 11 claim must be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, and for the reasons set forth in the ShoreTel Defendants' Motion to Dismiss, the Underwriter Defendants respectfully request the Court dismiss the Complaint in its entirety, with prejudice.

DATED:  August 26, 2008                    Bingham McCutchen LLP


By:  /s/ Charlene S. Shimada
         Charlene S. Shimada

Attorneys for Defendants
Lehman Brothers Inc. and J.P. Morgan Securities Inc.

| | |
|---|---|
| 1 | Bingham McCutcheon LLP<br>DONN P. PICKETT (SBN 72257) |
| 2 | donn.pickett@bingham.com<br>CHARLENE S. SHIMADA (SBN 91407) |
| 3 | charlene.shimada@bingham.com<br>JOHN D. PERNICK (SBN 155468) |
| 4 | john.pernick@bingham.com<br>ADRIENNE L. TACLAS (SBN 211232) |
| 5 | adrienne.taclas@bingham.com<br>Three Embarcadero Center |
| 6 | San Francisco, CA 94111-4067<br>Telephone: 415.393.2000 |
| 7 | Facsimile: 415.393.2286 |
| 8 | Attorneys for Defendants<br>Lehman Brothers Inc. and J.P. Morgan Securities Inc. |
| 9 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 14 | In re SHORETEL, INC. SECURITIES LITIGATION | Case No. CV 08 0271 CRB |
| 15 | | **[PROPOSED] ORDER GRANTING DEFENDANTS LEHMAN BROTHERS INC. AND J.P. MORGAN SECURITIES INC.'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| 16 | This Document Relates To:<br>ALL ACTIONS. | |
| 17 | | |
| 18 | | |
| 19 | | Date: November 7, 2008<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Charles R. Breyer |
| 20 | | |

A/72628256.1/2017670-0000330918

1    Defendants Lehman Brothers Inc. and J.P. Morgan Securities Inc.'s Motion to

2    Dismiss Consolidated Amended Class Action Complaint (the "Underwriter Defendants' Motion

3    to Dismiss") in the above-referenced action came on for hearing before the Honorable Charles R.

4    Breyer on November 7, 2008.

5    Having considered all of the papers filed by the parties in connection with, and

6    incorporated by, the Underwriter Defendants' Motion to Dismiss, the papers and records on file

7    in this action, the parties' arguments at the hearing on this matter and other matters of which the

8    Court may properly take judicial notice, the Court finds that:

9    Plaintiffs have failed to adequately plead any claims for relief pursuant to Federal

10   Rules of Civil Procedure 9(b) and 12(b)(6).

11   The court HEREBY ORDERS:

12   The Underwriter Defendants' Motion to Dismiss is GRANTED without leave to

13   amend.

14

15   IT IS SO ORDERED:

16

     DATED: _____        _____
17                                         The Honorable Charles R. Breyer
18                                         United States District Judge

19

20

21

22

23

24

25

26

27

28

A/72628256.1/2017670-0000330918                    1

[PROPOSED] ORDER GRANTING DEFENDANTS LEHMAN BROTHERS INC. AND J.P. MORGAN
SECURITIES INC.'S MOTION TO DISMISS, CASE NO. CV 08 0271 CRB