1  SUSAN S. MUCK (CSB NO. 126930)
   smuck@fenwick.com
2  DEAN S. KRISTY (CSB NO. 157646)
   dkristy@fenwick.com
3  JENNIFER L. KELLY (CSB NO. 193416)
   jkelly@fenwick.com
4  LESLIE KRAMER (CSB NO. 253313)
   lkramer@fenwick.com
5  FENWICK & WEST LLP
   555 California Street
6  12th Floor
   San Francisco, CA  94104
7  Telephone:     (415) 875-2300
   Facsimile:      (415) 281-1350
8
   Attorneys for Defendants ShoreTel, Inc.; John W.
9  Combs; Michael E. Healy; Edwin J. Basart; Gary J.
   Daichendt; Thomas Van Overbeek; Kenneth D.
10 Denman; Charles D. Kissner; and Edward F.
   Thompson

11

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15
   In re SHORETEL, INC.              Case No. C-08-00271-CRB
16 SECURITIES LITIGATION
                                     **SHORETEL DEFENDANTS' NOTICE OF**
17                                   **MOTION AND MOTION TO DISMISS**
                                     **CONSOLIDATED AMENDED CLASS**
18                                   **ACTION COMPLAINT**

19
   This Document Relates To:         Date:      November 7, 2008
20                                   Time:      10:00 a.m.
   ALL ACTIONS.                      Courtroom: 8, 19th Floor
21                                   Judge:     Hon. Charles R. Breyer

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys At Law
San Francisco

1

**TABLE OF CONTENTS**

2
**Page**

3  NOTICE OF MOTION AND MOTION ....................................................................................... iv

4  ISSUES TO BE DECIDED ...................................................................................................... iv

5  SUMMARY OF ARGUMENT .................................................................................................. v

6  MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

7  I.  INTRODUCTION .......................................................................................................... 1

8  II.  FACTUAL BACKGROUND .......................................................................................... 1

9  A.  ShoreTel & Its IPO ............................................................................................ 1

10  B.  ShoreTel Reports Record Revenues for Q1 and Q2 of 2008 .................. 2

11  C.  This Lawsuit ........................................................................................................ 3

12  III.  LEGAL STANDARDS.................................................................................................... 3

13  IV.  PLAINTIFFS' SECTION 11 CLAIMS FAIL AND SHOULD BE DISMISSED ............ 4

14  A.  Plaintiffs Have Not Alleged Any Actionable Misstatement or Omission ............. 5

15  1.  Statements Concerning the Company's Growth........................................ 6

16  2.  Statements Concerning The Company's Revenue Recognition ................ 9

17  3.  Statements Concerning the Company's Monitoring of Metrics .............. 11

18  4.  Statements Concerning the Company's Bad Debt Reserves ................... 12

19  B.  Plaintiffs' Claims Fail Because They Do Not Satisfy Rule 9(b) ........................ 14

20  V.  PLAINTIFFS' SECTION 15 CLAIM FAILS AND SHOULD BE DISMISSED ........... 15

21  VI.  CONCLUSION ............................................................................................................. 15

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)..................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .......................................................................... 3, 4, 8

*Belodoff v. Netlist, Inc.,*
    2008 WL 2356699 (C.D. Cal. May 30, 2008) ...................................... passim

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994).......................................................................... 4

*Hinerfeld v. United Auto Group,*
    1998 WL 397852 (S.D.N.Y. July 15, 1998) ............................................... 14

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000)..................................................................... 15

*In re Alamosa Holdings, Inc. Sec. Litig.,*
    382 F. Supp. 2d 832 (N.D. Tex. 2005) .......................................................... 6

*In re Ariba, Inc. Sec. Litig,*
    2005 WL 608278 (N.D. Cal. Mar. 16, 2005) ................................................ 8

*In re Convergent Techs. Sec. Litig.,*
    948 F.2d 507 (9th Cir. 1991)................................................................. 4, 6, 9

*In re Daou Sys. Inc., Sec. Litig.,*
    411 F.3d 1006 (9th Cir. 2005)............................................................ 6, 8, 11, 14

*In re DDi Corp. Sec. Litig.,*
    2005 WL 3090882 (C.D. Cal. July 21, 2005) ............................................... 6

*In re DDi Corp., Sec. Litig.,*
    2005 U.S. Dist. LEXIS 1056 (C.D. Cal. Jan. 7, 2005) ................................. 7, 14, 15

*In re Dreamworks Animation SKG, Inc. Sec. Litig.,*
    2006 U.S. Dist. LEXIS 24456 (C.D. Cal. Apr. 12, 2006) .............................. 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) ................................................... 4, 5, 6

*In re Gemstar-TV Guide, Int'l Inc. Sec. Litig.,*
    2003 U.S. Dist. LEXIS 25884 (C.D. Cal. Aug. 15, 2003) ............................. 5

*In re Impac Mortg. Holdings, Inc. Sec. Litig.,*
    2008 WL 2104208 (C.D. Cal. May 19, 2008) .............................................. 14

*In re Infonet Servs. Corp. Sec. Litig.,*
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) .................................................. 9, 15

*In re McKesson HBOC, Inc. Sec. Litig.,*
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................... 15

*In re Quarterdeck Office Sys. Inc., Sec. Litig.,*
    854 F. Supp. 1466 (C.D. Cal. 1994)....................................................... 4, 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Ross Sys. Sec. Litig.,*
    1994 WL 583114 (N.D. Cal. July 21, 1994)................................................ 15

*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996)........................................................... passim

*In re Syntex Corp. Sec. Litig.,*
    1993 WL 476646 (N.D. Cal. Sept. 1, 1993) ............................................ 12

*In re Verifone Sec. Litig.,*
    11 F.3d 865 (9th Cir. 1993).............................................................. 7, 9

*In re Verifone Sec. Litig.,*
    784 F. Supp. 1471 (N.D. Cal. 1992) ..................................................... 7

*In re Worlds of Wonder Sec. Litig.,*
    35 F.3d 1407 (9th Cir. 1994)............................................................. 9

*Kane v. Madge Networks N.V.,*
    2000 WL 33208116 (N.D. Cal. May 26, 2000),
    *aff'd sub nom.*, 32 Fed. Appx. 905 (9th Cir. 2002)................................. 13

*Metzler Inv. GmbH v. Corinthian* Colleges, Inc.,
    --- F.3d ---, 2008 WL 2853402 (9th Cir. July 25, 2008)............................ 6

*Mitan v. Feeney,*
    497 F. Supp. 2d 1113 (C.D. Cal. 2007) ................................................. 8

*Panther Partners, Inc. v. Ikanos Commc'ns Inc.,*
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................ 4, 5, 8, 12

*Stack v. Lobo,*
    1995 WL 241448 (N.D. Cal. Apr. 20, 1995) .................................... 11, 14

*Stack v. Lobo,*
    903 F. Supp. 1361 (N.D. Cal. 1995) ................................................... 13

*Steckman v. Hart Brewing, Inc.,*
    143 F.3d 1293 (9th Cir. 1998)...................................................... 4, 7, 9, 15

*Wenger v. Lumisys, Inc.,*
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................... 9

*Wietschner v. Monterey Pasta Co.,*
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) ................................................. 7

**STATUTES**

15 U.S.C. § 77k .......................................................................................... 3

15 U.S.C. § 77k(a) ...................................................................................... 4

15 U.S.C. § 77o ........................................................................................... 3

17 C.F.R. 229.303 ....................................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**NOTICE OF MOTION AND MOTION**

2    NOTICE IS HEREBY GIVEN that on November 7, 2008 at 10:00 a.m., in the Courtroom

3    of the Honorable Charles R. Breyer, United States Courthouse, Courtroom 8, 19th Floor, 450

4    Golden Gate Avenue, San Francisco, California, defendants ShoreTel, Inc. ("ShoreTel" or the

5    "Company"), John W. Combs, Michael E. Healy, Edwin J. Basart, Gary J. Daichendt, Thomas

6    Van Overbeek, Kenneth D. Denman, Charles D. Kissner and Edward F. Thompson (the

7    "Individual Defendants") (collectively, "Defendants") will move this Court to dismiss the

8    Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the

9    "Complaint").  This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and

10    9(b) on the grounds that Plaintiffs have failed to allege facts sufficient to state a claim against any

11    defendant.  This motion is based on this Notice of Motion and Motion, the attached Memorandum

12    of Points and Authorities, the Request for Judicial Notice ("RJN") and Declaration of Jennifer L.

13    Kelly ("Decl.") filed herewith, all pleadings and papers on file herein, and such other matters that

14    may be presented to the Court.

15

**ISSUES TO BE DECIDED**

16    1.    Whether Plaintiffs' claims under Section 11 of the 1933 Securities Act should be

17    dismissed because:

18
        (a)    Plaintiffs have failed to identify any actionable misrepresentation or
             omission by Defendants;

19

20
        (b)    Plaintiffs have failed to plead facts giving rise to a plausible basis for relief
             as required by Rule 8(a); or

21
        (c)    Plaintiffs have failed to plead facts with the particularity required by Rule
             9(b);

22

23    2.    Whether Plaintiffs' claim under Section 15 of the 1933 Securities Act should be

24    dismissed because:

25
        (a)    Plaintiffs have failed to establish a primary violation of the securities laws;

26    or

27
        (b)    Plaintiffs have failed to allege that the Individual Defendants were control
             persons.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**SUMMARY OF ARGUMENT**

2      Plaintiffs seek to hold ShoreTel and its officers, directors and underwriters responsible for

3   a decline in the Company's stock price that occurred six months *after* its initial public offering,

4   when the Company announced its quarterly revenues would fall slightly short of expectations due

5   to a decline in sales to *new* customers that quarter, on the theory the Prospectus "failed" to warn

6   investors that the Company's historical growth was unsustainable.  Specifically, Plaintiffs

7   claim—based on uncorroborated, largely second-hand reports by so-called "confidential

8   witnesses" whose positions and tenures at the Company are never even described—that ShoreTel

9   was so driven to achieve an IPO at any cost that it engaged in various allegedly nefarious

10  practices to pump up its pre-IPO revenues to levels that the Company knew, or should have

11  known, would not continue.  Although ShoreTel posted record results even after the IPO,

12  Plaintiff's theory is that ShoreTel somehow knew that it would later suffer a downturn and

13  misrepresented facts in its IPO prospectus.  Plaintiffs' Complaint fails to state a claim under

14  Sections 11 and 15 of the 1933 Securities Act for at least five reasons.

15
- *First*, Plaintiffs fail to identify any materially misleading statement or omission
16    in ShoreTel's Registration Statement and Prospectus—an essential element of
      their claims.

17
- *Second*, Plaintiffs fail to allege the most basic facts to support their theory that
18    ShoreTel inflated its pre-IPO results—intentionally or not.  Indeed, ShoreTel
      has never adjusted, much less restated, its financial results.  Thus, even if
19    Plaintiffs are not required to meet the rigorous pleading standards of Rule 9(b)
      (which Defendants submit they are), they fail to state a claim because they
20    have not shown their theory is anything but speculative.

21
- *Third*, the law is clear ShoreTel had no obligation to predict the Company's
      future financial results (and in fact, it made no such predictions).

22
- *Fourth*, the Complaint itself reveals there is no causal connection between the
23    statements or omissions of which Plaintiffs complain and the Company's
      announcement that affected its stock price.  Plaintiffs therefore cannot possibly
24    demonstrate loss causation.

25
- *Finally*, the Prospectus specifically cautioned investors about the precise risks
      that came to pass, including that the Company's historical growth and revenues
26    might *not* continue.  In light of these clear disclosures, and because the
      Prospectus contained no predictions of future results, no reasonable investor
27    can claim to have been misled that historical results would continue.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.    **INTRODUCTION**

3

In the quarter following ShoreTel's July 2007 initial public offering, ShoreTel achieved its

4

highest revenues in its twelve-year history.  The next quarter, early in January 2008, ShoreTel

5

announced slightly lower than expected revenues due to a decline in sales to *new customers*,

6

though sales to existing customers had grown.  Although the Prospectus had repeatedly warned

7

investors not to rely on past results as indicative of future sales, and although the Prospectus made

8

no predictions as to future sales, ShoreTel's stock price fell and Plaintiffs immediately sued,

9

claiming the January 2008 announcement somehow demonstrates that statements made in the

10

Prospectus *six months earlier* were materially false and misleading.

11

Plaintiffs' theory is that ShoreTel failed to warn investors the Company's pre-IPO revenue

12

growth had been fueled by aggressive sales tactics and discounts, duping investors into believing

13

its historical growth would continue.  No facts are alleged to support this; ShoreTel has never

14

adjusted, much less restated, its financial results, and the Prospectus disclosed the exact facts

15

Plaintiffs claim were omitted.  Since nothing in Plaintiffs' Complaint elevates their allegations

16

from the speculative to the plausible, the Complaint should be dismissed with prejudice.

17

### II.    **FACTUAL BACKGROUND**

18

#### A.    **ShoreTel & Its IPO**

19

Founded in 1996, ShoreTel is a leading provider of IP telecommunications systems for

20

enterprise customers.  ¶ 16[1]; Decl. Ex. A (Prospectus) at 1.[2]  From 2004 to 2006, the Company

21

experienced significant growth, with revenues climbing from $18.8 million to $61.6 million.  *Id.*

22

ShoreTel held its initial public offering on July 3, 2007.  In the IPO Prospectus, ShoreTel

23

detailed numerous risks about its business and expressly warned investors that its recent financial

24

performance was not indicative of future results.  *Id.* at 7-23.  The Prospectus described the

25

26

[1] Unless otherwise indicated, all paragraph references herein are to the Consolidated Complaint.

27

[2] On this motion, the Court may take judicial notice of the Company's Prospectus, other documents referenced in the Consolidated Complaint, and other documents filed with the Securities and Exchange Commission.  *See* Request for Judicial Notice in Support of ShoreTel

28

Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint ("RJN").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    rapidly evolving and highly competitive nature of the market for telecommunications systems,

2    especially in light of larger, better established competitors with more capital.  *Id*. at 7, 24.  It

3    disclosed that the sales cycle for its products was lengthy and unpredictable, making it difficult to

4    forecast sales and expenses.  *Id*. at 11.  It also warned that the Company's operating results could

5    fluctuate in the future based on a number of factors, including the timing and volume of

6    shipments in a particular period, the timing and success of new product introductions by ShoreTel

7    and its competitors, the timing of revenue recognition, changes in pricing or sales terms, and the

8    purchasing and budgeting cycles of its customers.  *Id*. at 9-10.

9         The Prospectus did not make any representations that the Company's historical growth or

10   demand for its products would continue.  To the contrary, its *seventeen* pages of risk disclosures

11   made clear the risk that it would *not*.  *Id*. at 7-23.  The Prospectus warned investors that revenue

12   growth could decline, cautioning them "*not [to] consider our recent growth rates in terms of*

13   *revenue and net income as indicative of our future growth*," (*id*. at 7, emphasis added) and

14   warning that ShoreTel's "*historical results are not necessarily indicative of the results to be*

15   *expected in any future period*."  *Id*. at 30 (emphasis added).  It warned that fluctuations in its

16   operating results could cause the price of its stock to "decline substantially."  *Id*. at 9.  It warned

17   that ShoreTel had previously used price reductions to attract new customers and "*may be required*

18   *to do so in the future,*" which could "*have a negative effect on our gross margins.*"  *Id*. at 8

19   (emphasis added).  Finally, the Prospectus cautioned investors that the market for enterprise IP

20   telecommunications was nascent and that its products "*could fail to achieve market acceptance,*

21   *which in turn could significantly harm [ShoreTel's] business*."  *Id*. at 9 (emphasis added).

22        **B.    ShoreTel Reports Record Revenues for Q1 and Q2 of 2008**

23        On October 29, 2007, ShoreTel announced financial results for its first quarter of 2008.

24   The Company reported record revenues of $32 million–an increase of **over 57 percent** from the

25   first quarter of 2007.  Decl. Ex. B.  Despite these outstanding results for its first post-IPO quarter,

26   ShoreTel again cautioned investors about the risks and uncertainties facing the Company.  *Id*.

27        On January 7, 2008, ShoreTel announced preliminary results for the second quarter of

28   2008 (ended December 31, 2007).  ¶ 52.  Although the Company achieved its second highest

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

revenue quarter *ever*, with preliminary results of $29.7 to $30.7 million and increased sales to existing customers, ShoreTel reported that its final quarterly revenues were likely to be below its prior expectations of $32 to $35 million.  ¶ 52; Decl. Ex. C.  The Company attributed the shortfall to lower than expected sales to *new* customers.  *Id.*  Gross margin and GAAP operating expenses were expected to be within prior expectations.  Decl. Ex. C.  ShoreTel's stock price fell over 50% that day.  ¶ 54.  On January 29, 2008, ShoreTel released its final results for Q2 2008, reporting revenues of $30.6 million—an increase from Q2 of 2007 of 36 percent.  Decl. Ex. D.

### C.    This Lawsuit

Within three weeks of the stock decline, two nearly identical class action complaints were filed in this Court against ShoreTel, its officers and directors, and its underwriters, Lehman Brothers, Inc. and J.P. Morgan Securities, Inc. (the "Underwriter Defendants").[3]  The cases were consolidated, and on April 25, 2008, Loren Swanson and Art Landesman ("Plaintiffs") were appointed lead Plaintiffs.  Plaintiffs filed the Consolidated Complaint on June 27, 2008 on behalf of all purchasers of ShoreTel's common stock "pursuant to and/or traceable" to the Company's IPO.  ¶ 15.  They allege causes of action against ShoreTel, the Individual Defendants, and the Underwriter Defendants pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and against the Individual Defendants pursuant to Section 15 of the 1933 Act, 15 U.S.C. § 77o. The gravamen of Plaintiffs' claims is that the Company was so driven to achieve an IPO "at any cost" that it engaged in practices designed to artificially inflate its pre-IPO revenues, including, *inter alia*, encouraging "pushy and irresponsible sales tactics" and prematurely recognizing revenue it was unlikely to collect.  ¶¶ 5-10, 23, 30, 32, 42, 51.

## III.    LEGAL STANDARDS

The Supreme Court recently declared that to survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted).  To satisfy its pleading obligations under Rule 8(a)(2), a plaintiff must offer "more than labels and conclusions,

---

[3] The ShoreTel defendants join in and incorporate by reference the arguments in the Underwriters' Motion to Dismiss.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65.

2    Rather, the allegations must include enough facts to state a claim that is "plausible on its face,"

3    that is, "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1960, 1974.

4        In granting a motion to dismiss a Section 11 claim similar to that alleged here, the Central

5    District recently observed that *Twombly* "serves to remind the district courts that they are entitled

6    to 'insist upon some specificity in pleading before allowing a potentially massive factual

7    controversy to proceed.'" *Belodoff v. Netlist, Inc*., 2008 WL 2356699, at *12 (C.D. Cal. May 30,

8    2008) (quotation omitted) (dismissing Section 11 claims for, *inter alia*, failure to meet this

9    standard); *see also Panther Partners, Inc. v. Ikanos Commc'ns Inc.*, 538 F. Supp. 2d 662, 670

10   (S.D.N.Y. 2008) (dismissing Section 11 claims under *Twombly*, because allegations "lack[ed] the

11   specificity and detail needed to rise above the 'speculative' level and into the realm of a

12   'plausible' pleading").  The Court need not accept as true any conclusory allegations, legal

13   conclusions, unwarranted deductions of fact or unreasonable inferences.  *See Clegg v. Cult*

14   *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The Court may also disregard

15   allegations that are contradicted by documents referenced in the complaint or that are subject to

16   judicial notice.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

17   **IV.    PLAINTIFFS' SECTION 11 CLAIMS FAIL AND SHOULD BE DISMISSED**

18       To state a Section 11 claim, Plaintiffs must allege facts which, if true, show that

19   Defendants issued a registration statement containing a material misstatement or omission.  *See*

20   15 U.S.C. § 77k(a); *Belodoff*, 2008 WL 2356699, at *7.  A representation or omission is material

21   only if it "would have misled a reasonable investor about the nature of his or her investment." *In*

22   *re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1403-04 (9th Cir. 1996) (quotation omitted); *see also*

23   *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  No claim can be alleged where the risks of

24   which a plaintiff complains were fully disclosed.  *Stac*, 89 F.3d at 1409 (disclosures render any

25   alleged misrepresentation or omission immaterial as a matter of law); *see also In re Quarterdeck*

26   *Office Sys. Inc., Sec. Litig*., 854 F. Supp. 1466, 1471 (C.D. Cal. 1994); *In re Flag Telecom*

27   *Holdings, Ltd. Sec. Litig*., 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004). *See generally In re*

28   *Convergent Techs. Sec. Litig*., 948 F.2d 507, 515-16 (9th Cir. 1991) (concluding an investor

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  cannot claim to have been misled by a document that actually discloses the allegedly omitted

2  facts).  Where plaintiffs allege a material omission, they must allege facts showing that

3  defendants possessed the omitted information at the time of the IPO and had a duty to disclose it.

4  *Flag Telecom*, 308 F. Supp. 2d at 255; *Panther*, 538 F. Supp. 2d at 669.

5  　　　　While fraud is not an element of a Section 11 claim, Rule 9(b)'s heightened pleading

6  standard nonetheless applies when such claim is grounded in fraud.  *Belodoff*, 2008 WL 2356699,

7  at *5; *Stac*, 89 F.3d at 1404-05 (recognizing Rule 9(b) serves important purposes of deterring

8  filing of complaints "as a pretext for the discovery of unknown wrongs" and prohibiting plaintiffs

9  "from unilaterally imposing upon the court, the parties and society enormous social and economic

10  costs absent some factual basis") (quotation omitted).  Where, as here, the gravamen of a Section

11  11 claim is fraud, Rule 9(b) applies.  *Id.* at 1405 n.2.  This is true even if plaintiffs specifically

12  disclaim that their claim sounds in fraud or take care to allege defendants acted only negligently.

13  *Id*; *see also Belodoff*, 2008 WL 2356699, at *6; *In re Gemstar-TV Guide, Int'l Inc. Sec. Litig*.,

14  2003 U.S. Dist. LEXIS 25884, at *28 (C.D. Cal. Aug. 15, 2003).  The Complaint here fails to

15  satisfy the notice pleading standards of Rule 8(a), much less the rigorous standards of 9(b).

16  　　　　**A.**　　　　**Plaintiffs Have Not Alleged Any Actionable Misstatement or Omission**

17  　　　　Plaintiffs speculate that ShoreTel exaggerated its pre-IPO revenue growth by engaging in

18  "aggressive sales tactics" ("steep discounts," giveaways of demonstration products, and extended

19  payment terms) and violated Section 11 by failing to disclose these practices in the Prospectus.

20  *See, e.g.,* ¶¶ 6, 22, 42.  The Complaint does not contain a single fact supporting this theory.

21  　　　　ShoreTel reported record revenues in the first quarter *after* the IPO, putting the lie to

22  Plaintiffs' theory that ShoreTel could not maintain its pre-IPO growth.  The Company has never

23  restated or adjusted its financial results.  Its policies on discounts, demo products and reserves

24  were fully disclosed in the Prospectus, and Plaintiffs allege no facts showing ShoreTel violated

25  them.  The Prospectus warned investors again and again that ShoreTel's previous revenue growth

26  might not continue.  The only other alleged omission—that ShoreTel failed to disclose pre-IPO

27  accounting issues—is refuted by the explicit disclosure of those issues in the Prospectus.  Decl.

28  Ex. A at 13-14.  Plaintiffs' reliance on a handful of vaguely negative aspersions cast by former

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   employees whose positions or tenures at the Company are never described is insufficient to

2   elevate Plaintiffs' theory from the speculative to the plausible.  Accordingly, the Complaint

3   should be dismissed.

4   ### 1.     Statements Concerning the Company's Growth

5       Plaintiffs challenge ShoreTel's statement in the Prospectus that the Company

6   "experienced significant growth in recent periods, with our total revenue growing from $18.8

7   million for 2004 to $61.6 million for 2006."  ¶ 20.  According to Plaintiffs, this statement was

8   materially misleading because demand for ShoreTel's products resulted from "forceful sales

9   tactics" that caused the Company to experience "exaggerated growth" as it "exhausted its

10  customer base to book sales prior to the IPO."  ¶ 23.  Their theory is that Defendants used these

11  tactics to boost revenues to levels that they knew, or should have known, were unsustainable.  ¶¶

12  5-11; 20-23, 51.  This allegation fails to state a claim for four reasons.

13      First, Plaintiffs fail to allege any way in which this statement was materially false or

14  misleading at the time of the IPO.[4]  Accurate statements of historical fact are not actionable.

15  *Belodoff*, 2008 WL 2356699, at *9; *see also Convergent*, 948 F.2d at 513 (historical reports do

16  not imply any comparison between past and present growth); *Flag Telecom*, 308 F. Supp. 2d at

17  255-56.

18      Second, Plaintiffs fail to explain how any alleged pre-IPO boost in sales rendered the

19  Prospectus misleading in any way.  Courts in this Circuit have consistently rejected allegations

---

20  [4] Absent some link between the misrepresentations Plaintiffs allege and the actual disclosures that
    affected ShoreTel's stock price, Plaintiffs cannot possibly demonstrate loss causation, an

21  independent basis for dismissal of the Complaint.  *See In re DDi Corp. Sec. Litig.*, 2005 WL
    3090882, at *14-15 (C.D. Cal. July 21, 2005) (defendants are entitled to raise Section 11(e) on a

22  motion to dismiss where absence of loss causation is clear from face of the complaint); *In re
    Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 865 (N.D. Tex. 2005).  Plaintiffs' theory

23  is that ShoreTel inflated its revenues by engaging in various revenue recognition practices that
    artificially inflated its financial results.  Yet according to Plaintiffs' own allegations, ShoreTel's

24  stock price decline was precipitated by its disclosure of lower than expected sales to new
    customers in the second quarter of 2008, not by disclosure of any revenue issues or accounting

25  adjustments.  ¶¶ 52-54. Since there is no basis for inferring any connection between the alleged
    omissions and ShoreTel's stock price decline, the Complaint should be dismissed.  See *Metzler*

26  *Inv. GmbH v. Corinthian Colleges, Inc.*, --- F.3d ---, 2008 WL 2853402, at *10 (9th Cir. July 25,
    2008) (dismissing a complaint for securities fraud which pleaded only inferences of loss causation

27  as to certain disclosures); *see also In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1027 (9th Cir.
    2005) (loss causation was not adequately pleaded for losses taking place prior to public

28  disclosure).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    that a company artificially inflated pre-IPO sales through channel stuffing or other tactics as

2    "speculation made in hindsight."  *E.g.*, *Steckman*, 143 F.3d at 1298; *Wietschner v. Monterey*

3    *Pasta Co.*, 294 F. Supp. 2d 1102, 1114 (N.D. Cal. 2003); *In re Dreamworks Animation SKG, Inc.*

4    *Sec. Litig.*, 2006 U.S. Dist. LEXIS 24456, at *10 (C.D. Cal. Apr. 12, 2006).  Plaintiffs have

5    alleged *no* facts supporting an inference that ShoreTel's sales practices caused its growth to

6    decline after the IPO; to the contrary, ShoreTel's revenue growth increased after the IPO.  In the

7    absence of facts from which the Court can infer that ShoreTel engaged in sales practices which it

8    knew, at the time of the IPO, would cause revenues to decline, Plaintiffs' allegations fail.[5]  *See*

9    *Belodoff*, 2008 WL 2356699, at *13 (allegation that company "stuffed the market" with high-

10   margin products in period leading up to IPO "does not rise above speculation as to the causes of a

11   decline in revenue" and is insufficient to state a claim under Section 11); *see also In re Verifone*

12   *Sec. Litig.*, 784 F. Supp. 1471, 1484-85 (N.D. Cal. 1992) (failure to disclose fact that revenue was

13   "boosted" by large one-time sales that would not recur in later quarters did not render disclosures

14   misleading); *In re DDi Corp., Sec. Litig.,* 2005 U.S. Dist. LEXIS 1056, at *65-66 (C.D. Cal. Jan.

15   7, 2005) (dismissing Section 11 claim where allegations provided "no insight into whether, and

16   by how much, channel stuffing skewed the Prospectus").

17          Plaintiffs fail to make the requisite showing.  They rely solely on unsupported allegations

18   by former employees that unidentified sales staff offered customers "significant discounts" and

19

20

21

22

23

24

25   ───────────────

26   [5] Any allegations of knowledge would be undercut by Plaintiffs' allegations elsewhere in the
     Complaint that the Company "was unable to reasonably forecast its growth." ¶ 35; *see also* Part
     IV.A.3, *infra*; *In re Verifone Sec. Litig.*, 11 F.3d 865, 869 n.5 (9th Cir. 1993) (dismissing Section
27   11 claim where allegation that company's future was "known" to it was undercut by plaintiffs'
     allegation that the company lacked controls sufficient to monitor company's financial
28   performance).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"extended payment terms."[6]  ¶¶ 21-22.  No facts are alleged describing the terms of a single such discount or offer, the identity of a single customer to whom such discount or offer was made, or the financial impact of any such discount or offer.  Plaintiffs do not allege a single fact from which the Court could infer that Defendants had reason to know that such sales tactics—if they even existed—would lead to a post-IPO decline in demand.  These allegations thus lack the specificity and detail needed even under Rule 8(a).  *See Belodoff*, 2008 WL 2356699, at *11-12 (rejecting Section 11 claim based on defendants' failure to disclose company had "loaded up" customers with product prior to the IPO, that they would reduce their purchases post-IPO, and that this would impact the company's revenues; such claim lacked the "factual basis" required by *Twombly*); *Panther*, 538 F. Supp. 2d at 670-71 (dismissing complaint where plaintiff failed to allege facts showing "why or how" the defendants should have known pre-IPO shipments of large amounts of product would lead to a post-IPO decline in demand).[7]

Third, ShoreTel had no obligation to predict the Company's future financial results.  *Stac*, 89 F.3d at 1409 (dismissing Section 11 claim and holding "companies are not required to predict

---

[6] The Consolidated Complaint places near total reliance on wholly uncorroborated information provided by four supposed "confidential witnesses" whose personal knowledge is not shown. CW#1, CW#2 and CW#3, on whom Plaintiffs rely for their assertions that the Company's actions were driven by the desire to achieve an IPO "at any cost," are identified as a "former Vice President," a "former communications employee" and a "former sales employee" whose dates of employment at the Company are not alleged.  ¶¶ 7-9, 21.  Plaintiffs do not identify these former employees' job responsibilities, let alone whether they held positions that would have given them access to the information from which they could draw conclusions about management's motivations.  The source of CW#3's alleged knowledge about pricing discounts is admittedly *not his own experience*, but information from yet another unidentified former employee.  ¶ 21. Plaintiffs' failure to plead facts demonstrating that any of their supposed confidential witnesses have personal knowledge of these supposed facts should provide an independent basis for the Court to dismiss their pleading as speculative and therefore deficient under *Twombly*.  As the Central District recognized last year, even Rule 8(a) requires a plaintiff to allege facts that "nudge their claims across the line from conceivable to plausible."  *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1124 (C.D. Cal. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).  *Accord Daou*, 411 F.3d at 1015 (evaluating sufficiency of confidential witness allegations under Securities Reform Act); *In re Ariba, Inc. Sec. Litig*, 2005 WL 608278, at *8 (N.D. Cal. Mar. 16, 2005) (same; noting that a confidential witness' information should consist of facts sufficient to "provide a basis for his or her observations and conclusions and to persuade the Court that he or she is speaking from personal knowledge rather than 'merely regurgitating gossip and innuendo'") (quotation omitted).

[7] The Court in *Panther* rejected as "preposterous" the notion that defendants had any duty to track customers' inventory or advise they were ordering too much product.  538 F. Supp. 2d at 670.  So too is the notion here that the Company—which operates in a highly competitive, evolving market—should not have offered discounts to gain new business.  *See* ¶ 22.

1  the future"); *Verifone,* 11 F.3d at 869 (defendants have no duty to "state the 'fact' that future

2  prospects might not be as bright as past performance); *Convergent*, 948 F.2d at 516 (no duty to

3  disclose internal projections); *Belodoff*, 2008 WL 2356699, at *8 (nondisclosure of alleged

4  downward trend in market not actionable because it amounted to a "future trend projection" that

5  defendants had no duty to disclose).[8]  This is true even if a future decline was predictable.

6  *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("[d]isclosure of accurate

7  historical data does not become misleading even if less favorable results might be predictable by

8  the company in the future.").

9         Finally, any contention that the Prospectus created a false impression regarding future

10  demand is refuted by the express language of the Prospectus.  Not only does the Prospectus

11  specifically warn investors that historic results may not be indicative of future growth, it is replete

12  with cautionary statements about uncertain demand and future growth. Decl. Ex. A at 7-23.  No

13  reasonable investor could have believed the Company's statement of historical results contained a

14  prediction of future performance.  Plaintiffs' allegations thus fail as a matter of law.  *See Stac*, 89

15  F.3d 1408-09; *Convergent*, 948 F.2d at 515-16; *Quarterdeck,* 854 F. Supp. at 1471-72.

16         **2.      Statements Concerning The Company's Revenue Recognition**

17         Plaintiffs' next theory, equally flawed, is that ShoreTel prematurely recognized revenue in

18  violation of its own policies.  They point to the following two statements from the Prospectus:

19  

20  [8] ShoreTel's disclosure obligations are governed by Item 303 of Regulation S-K, 17 C.F.R.
   229.303 ("Item 303").  Plaintiffs allege that ShoreTel violated Item 303 by failing to disclose

21  pricing discounts and the reduction in bad debt reserves.  ¶ 51.  To state a Section 11 claim based
   on violation of Item 303, Plaintiffs must show the Company failed to disclose (1) a *known*

22  adverse trend that was (2) *reasonably likely* to have a *material* effect on its financial condition or
   operating results.  *Steckman*, 143 F.3d at 1296.  As shown above, Plaintiffs plead neither.  Item

23  303 does not require the disclosure of forward looking projections.  *Id.* (rejecting Section 11
   claim where alleged factual data did not reflect known material adverse trend); *Convergent*, 948

24  F.2d at 516 ("Instruction 7 to Item 303(a) explicitly states that 'forward-looking' information
   need not be disclosed . . .").  Moreover, ShoreTel disclosed its use of discounts and the level of its

25  bad debt reserves.  *See* IV.A.1 and A.4.  Furthermore, to the extent ShoreTel's statements are
   construed as forward-looking, they are protected by the bespeaks caution doctrine and are not

26  actionable.  *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413-14 (9th Cir. 1994)
   (noting that doctrine "provides a mechanism by which a court can rule as a matter of law... that

27  defendants' forward-looking representations contained enough cautionary language or risk of
   disclosure to protect the defendant against claims of securities fraud.") (quotation omitted); *In re*

28  *Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1088-89 (C.D. Cal. 2003).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3

> Payment terms generally range from net 30 to net 60 days. In the event payment terms are extended materially from our standard business practices, the fees are deemed not to be fixed or determinable and revenue is recognized when the payments become due. (¶ 24).

4
5
6

> We assess the ability to collect from channel partners based on a number of factors, including creditworthiness and past transaction history. If the channel partner is not deemed creditworthy, we defer all revenue from the arrangement until payment is received and all other revenue recognition criteria have been met. (¶ 31).

7      Plaintiffs claim these statements were materially untrue because the Company freely

8  "extend[ed] payment terms beyond net 30 to 60 days" (¶ 26) and granted credit "freely and

9  without regard" to customers' creditworthiness (¶ 32) but nonetheless recognized revenue as soon

10 as contracts were signed. ¶¶ 26, 30, 32. The only "facts" Plaintiffs have alleged in support of this

11 theory—as reported by CW #4— are that (1) "several" customers owed approximately $500,000

12 to ShoreTel at the time of the IPO (¶ 28); (2) "certain" of the Company's customers had not had

13 their credit reviewed for years (¶ 32); and (3) unidentified "Company executives" told an

14 employee to "extend credit 'without question'" to certain customers.  ¶ 32.

15      These allegations do not show how ShoreTel's statements were materially false or

16 misleading. The Prospectus merely states that payment terms "generally" range from net 30 to

17 net 60 days; nowhere does it state extensions would not be granted—to the contrary, the

18 challenged statement clearly contemplates they *would*.  ¶ 24. Likewise, the Prospectus states that

19 revenue recognition would be deferred only if an extension represented a <u>*material*</u> departure from

20 the Company's standard business practices. Plaintiffs have not alleged a single fact to show the

21 Company extended any customer's payment terms materially; indeed, Plaintiffs do not identify

22 the length or financial effect of any supposed extensions. *See generally* ¶¶ 26-30. Whether some

23 customers were past due at the time of the IPO has no bearing on the accuracy of the statement,

24 especially where Plaintiffs do not allege that a material financial adjustment was later required.

25      The Prospectus also does not state that credit would only be granted to customers who

26 were deemed creditworthy, merely that creditworthiness was one of many factors impacting the

27 Company's assessment of its *ability to collect*. Plaintiffs' assertion that the Company blindly

28 extended credit to all customers is unsupported and fails to show how the challenged statement

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    was untrue in any way.[9]

2           Finally, Plaintiffs' allegations are not well-pled; the Complaint lacks the most basic facts

3    necessary to satisfy Rule 8(a).  Plaintiffs do not identify a *single instance in which the Company*

4    *failed to comply with its stated policies.*  Plaintiffs do not identify a *single customer* to whom

5    credit was improvidently extended, a single transaction where revenue was reversed, or any other

6    adjustments to the Company's reported financial results.  Absent such basic facts, Plaintiffs fail to

7    allege that the challenged statements in the Prospectus were materially misleading.  *Belodoff*,

8    2008 WL 2356699, at *3; *see also Daou,* 411 F.3d at 1016-17 (to allege revenue recognition

9    improprieties, plaintiff must allege "such basic details" as the approximate amount by which

10   revenues and earnings were overstated, dates of the transactions, and identities of the customers

11   or employees involved); *Stack v. Lobo*, 1995 WL 241448, at *5 (N.D. Cal. Apr. 20, 1995)

12   (rejecting claim that company improperly recognized revenue when it signed contracts, rather

13   than when products shipped, where allegations did not identify a single customer or sale for

14   which the company prematurely recognized revenue).[10]

### 3.    Statements Concerning the Company's Monitoring of Metrics

16          Next, Plaintiffs complain about the Company's statement that it "monitor[s] a number of

17   key metrics to help forecast growth, establish budgets, measure the effectiveness of sales and

18   marketing efforts and measure operational effectiveness."  ¶ 33.  Plaintiffs do not contend the

---

[9] Plaintiffs' allegations do not support the conclusion that the Company engaged in a "practice" of extending credit to customers without regard to their ability to pay.  At most Plaintiffs allege that "certain" unidentified customers were extended credit without current credit reviews (¶ 32), not that these or other customers were uncreditworthy or failed to pay.  The only other "fact" Plaintiffs allege is that a single employee was told to extend credit to unidentified customers "without question" (as reported by CW#4, who admittedly is not reporting his *own* experience but that of a different unidentified employee whose position and date of employment are also not alleged).  Again, Plaintiffs do not allege whether this employee was told to extend credit to all or to certain customers, the amounts of credit extended, or whether the customers ultimately paid.

[10] Plaintiffs also challenge as untrue the statement in the Prospectus that ShoreTel's channel partners could use marketing allowances to buy demonstration products at discounts with the difference recorded as a reduction to revenue.  ¶¶ 43-45.  According to Plaintiffs, ShoreTel gave some channel partners "temporary" demonstration products for which the customer was not charged.  Plaintiffs never explain how that fact, if true, would render the challenged statement materially false or misleading; they offer no specifics at all, such as the amount of any financial impact, inventory overstatement, revenue understatement or any other information. The allegation is also directly at odds with Plaintiffs' theory that ShoreTel overstated pre-IPO revenues in order to accomplish its IPO.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Company failed to monitor these metrics; Plaintiffs' assertion is that the Company must not have

2    monitored them effectively because the prior CFO—who departed the Company *before* the

3    IPO—was not competent and was replaced.  *See* ¶¶ 34-35 (alleging that former CFO was "not in

4    control of or able to monitor" financials and Company was "unable to reasonably forecast its

5    growth or measure its effectiveness of sales and marketing efforts").  Plaintiffs' theory fails.

6         The Complaint does not identify any affirmative misrepresentations.  The challenged

7    statement accurately describes the Company's procedures and makes no guarantees about the

8    effectiveness of those efforts.  *See* Part IV.A.1, *supra*; *see also Panther*, 538 F. Supp. 2d at 671

9    (statement describing company's quality assurance program not actionable because it was

10   accurate.)  That ShoreTel missed its revenue projections does not undermine the accuracy of the

11   statement in the Prospectus that ShoreTel monitors key metrics.

12        Moreover, ShoreTel disclosed the *exact* *issues* about which Plaintiffs now complain.  The

13   Prospectus specifically warned investors of "material weaknesses" and "significant deficiencies"

14   in the internal controls over financial reporting, including inadequate staffing, and stated that it

15   had hired *a new CFO*.  Decl. Ex. A at 46; *see also id.* at 13-14 (disclosing insufficient "controls

16   related to the identification of all products and services associated with a sales arrangement,

17   including commitments made by [the Company's] sales and marketing personnel and channel

18   partners to provide specified upgrades, services or additional products to customers in the future"

19   and warning that inability to address these issues could affect its ability to report financial results

20   accurately).  The Company was not required to say anything more than this.  *See In re Syntex

21   Corp. Sec. Litig*., 1993 WL 476646, at *7 (N.D. Cal. Sept. 1, 1993) (company need not "denigrate

22   itself").

### 4.    Statements Concerning the Company's Bad Debt Reserves

24        Plaintiffs complain the Company violated Section 11 by accurately reporting in the

25   Prospectus its allowance for bad debt.  ¶ 38 ($256,000 for the period ended March 31, 2007).

26   This theory is not grounded on an assertion that the allowance was misstated or omitted, but

27   rather, on the unsupported conclusion that the Company set the allowance *too low*.  ¶ 42.

28   Plaintiffs allege *no facts* explaining how the accurate disclosure rendered the Prospectus false or

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    misleading.  Instead they argue solely that the allowance should have increased as accounts

2    receivable increased.  *Id.*  This does not come close to stating a claim.

3        Plaintiffs concede the Prospectus accurately reports the bad debt allowance and accounts

4    receivable for the three periods preceding the IPO.  Decl. Ex. A at F-3.  They also concede that

5    the Prospectus states that the Company sets its bad debt allowance based on *multiple* factors, not

6    just accounts receivable, and that the allowance represents management's "best estimate."  *See*

7    ¶ 38; Decl. Ex. A at 48 ("the amount of [the] allowance will fluctuate based upon changes in

8    revenue levels, collection of specific balances in accounts receivable and estimated changes in

9    channel partner credit quality or likelihood of collection. . . [It] represents management's best

10   estimate . . .").  Thus, all of the relevant information—the amount of the allowance, its relation to

11   accounts receivable, and what factors went into setting it—was right there for investors to read

12   and assess themselves.  An accurate statement of the bad debt allowance cannot serve as a basis

13   for Section 11 liability.  *See Belodoff*, 2008 WL 2356699, at *7.

14       As this Court has recognized, bad debt reserves are essentially "predictions about the

15   future."  *Kane v. Madge Networks N.V.*, 2000 WL 33208116, at *5 (N.D. Cal. May 26, 2000),

16   *aff'd sub nom.*, 32 Fed. Appx. 905 (9th Cir. 2002) (citations omitted).  Because reserves are based

17   on "relatively 'soft' information," it is not enough to allege that reserves are inadequate; plaintiffs

18   must allege why the prediction was "'a falsehood.'"  *Id.* (allegations regarding bad debt reserves

19   that did not identify any customers whose accounts were uncollectible failed to state a claim); *see*

20   *also Stack v. Lobo*, 903 F. Supp. 1361, 1368-69 (N.D. Cal. 1995) (rejecting claim based on

21   inadequate bad debt reserves based solely on allegations that reserves decreased from 7% of

22   accounts receivable to 4.8% at the same time the proportion of the company's sales to allegedly

23   "less creditworthy customers" increased).

24       Plaintiffs allege no facts showing the reserve was a "falsehood."  They do not allege that

25   collections were declining or that any accounts receivable had to be written off due to the amount

26   of the reserve.  Absent a material misstatement or omission, Plaintiffs' allegations amount to

27   nothing more than claims of mismanagement which are not actionable under the federal securities

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS CONSOLIDATED
COMPLAINT                        -13-            CASE NO. C-08-00271

1   laws.[11]

2       **B.      Plaintiffs' Claims Fail Because They Do Not Satisfy Rule 9(b)**

3           Rule 9(b)'s heightened pleading standard applies because Plaintiffs' claims are grounded

4   in fraud. *Daou*, 411 F.3d at 1027; *Belodoff*, 2008 WL 2356699, at *6 ("No reasonable jury could

5   conclude that [the company] carried out the channel stuffing practice, which implies an intent to

6   overstate revenue, and yet failed to disclose such practice through anything other than the intent

7   to deceive.").  Plaintiffs have accused the Company of being "so focused on generating revenue

8   in advance of the IPO" (¶ 5) that it engaged in acts designed to inflate revenue, including

9   "exhaust[ing]" its customer base (¶ 23) and prematurely recognizing revenue in violation of both

10  GAAP and its own policies (¶¶ 24-32), leading to "exaggerated growth" (¶ 23) and "materially

11  inflated" operating results.  ¶ 30; *see also* ¶ 7 ("everything about how the company was run had to

12  do with pushing for the IPO"); ¶ 9 (alleging that Company's President and CEO pushed

13  employees to "generate sales at any cost"); ¶ 29 (alleging Defendants' "razor-sharp focus on

14  achieving the goal of an IPO" led them to encourage improper tactics designed "to meet sales

15  metrics").  These allegations plainly accuse ShoreTel of overstating revenue in order to deceive

16  potential investors.  *See Belodoff*, 2008 WL 2356699, at *6 ("[f]ailing to state known facts and

17  attempting to create an inaccurate impression of future business are prototypical forms of

18  intentional fraud"); *Stac*, 89 F.3d at 1402-03 (allegations that company artificially inflated results

19  by offering companies "special terms" sounded in fraud); *see also DDi*, 2005 U.S. Dist. LEXIS

20  1056, at *63 (violation of revenue recognition policies is a type of "accounting fraud" subject to

21  heightened pleading).  Plaintiffs' allegations regarding bad debt reserves are likewise necessarily

22  grounded in fraud because Plaintiffs must show the Company's estimate was a falsehood.  *Stac*,

23

24

25

---

[11] Even an unreasonably low reserve is nothing more than a nonactionable claim of
26  mismanagement.  *See Hinerfeld v. United Auto Group*, 1998 WL 397852, at *7 (S.D.N.Y. July
    15, 1998); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 2008 WL 2104208, at *8 (C.D. Cal. May
27  19, 2008); *see also Stack*, 1995 WL 241448, at *5 ("accounting principles do not require a
    company to set its reserves for doubtful accounts at any predetermined percentage of accounts
28  receivable").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    89 F.3d at 1408-09.[12]  Accordingly, since Plaintiffs fail to satisfy Rule 9(b)'s pleading

2    requirements, the Section 11 claims should be dismissed.

3    **V.      PLAINTIFFS' SECTION 15 CLAIM FAILS AND SHOULD BE DISMISSED**

4            To state a claim under Section 15, Plaintiffs must establish: (1) a primary violation of the

5    securities laws; and (2) that the defendant exercised actual power or control over the primary

6    violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Because Plaintiffs

7    have not stated a claim under Section 11, their Section 15 claim necessarily fails as well.  *Infonet*,

8    310 F. Supp. 2d at 1155 n.24.  Plaintiffs also fail to allege facts showing that each Defendant was

9    a control person.  Allegations that the Individual Defendants—as a group—were control persons

10   "by virtue of their high-level positions with the Company" and involvement in the preparation of

11   the Registratiosn Statement are insufficient.  *See In re McKesson HBOC, Inc. Sec. Litig*., 126 F.

12   Supp. 2d 1248, 1277 (N.D. Cal. 2000) (plaintiff must demonstrate a "significant degree of day-to-

13   day operational control"); *see also In re Ross Sys. Sec. Litig*., 1994 WL 583114, at *5 (N.D. Cal.

14   July 21, 1994); *Howard*, 228 F.3d at 1067.

15   **VI.     CONCLUSION**

16           For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs'

17   Consolidated Complaint in its entirety, with prejudice.

18   Dated: August 26, 2008                    FENWICK & WEST LLP

19

20                                             By:_____/s/ Susan S. Muck_____

21                                                      Susan S. Muck

22                                             Attorneys for Defendants ShoreTel, Inc.;
                                               John W. Combs; Michael E. Healy;
23                                             Edwin J. Basart; Gary J. Daichendt;
                                               Thomas Van Overbeek; Kenneth D. Denman;
24                                             Charles D. Kissner; and Edward F. Thompson

25   _____
     [12] Any contention by Plaintiffs that these claims allege mere negligence is belied by their
26   assertion that Defendants' failure to disclose these issues violated Item 303.  A violation of Item
     303 requires *knowledge* by the defendant that an issue is reasonably likely to have a material
27   adverse impact on the issuer's financials. *Steckman*, 143 F.3d at 1296; *see also DDi*, 2005 U.S.
     Dist. LEXIS 1056, at *59-60 (fraud "lies at the core" of Section 11 claim "based, in part, on
28   Defendants' alleged failure to disclose a *known* decline in demand") (emphasis in original,
     quotation omitted).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO