Lewis S. Kahn (admitted *pro hac vice*)
lewis.kahn@ksfcounsel.com
Sarah C. Boone (Bar No. 268813)
sarah.boone@ksfcounsel.com
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Fax: (504) 455-1498

Lead Counsel for Lead Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re SHORETEL, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | **Case No.: C-08-00271-CRB**<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>JUDGE: Charles R. Breyer<br>CTRM: 8, 19th Floor<br>DATE: July 2, 2010<br>TIME: 10:00 a.m. |

NOTICE OF MOTION AND LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

CASE NO. C-08-00271-CRB

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on Friday July 2, 2010 at 10:00 a.m. or as soon thereafter as counsel may be heard at the United States District Court, located at 450 Golden Gate Ave., San Francisco, CA 94102 in Courtroom 8, the Honorable Charles R. Breyer presiding, Lead Plaintiffs Art Landesman and Loren Swanson will and hereby do make an unopposed motion for preliminary approval of the Settlement set forth in the Stipulation of Settlement dated June 4, 2010 and filed herewith. Plaintiffs' motion is based on the Memorandum in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, the Stipulation of Settlement, the Declaration of Kim E. Miller, and such additional evidence or argument as the Court may consider.

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB                                    i

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. iv

**ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))** ...........................................1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...........................................1

    **I.**    INTRODUCTION ................................................................1

    **II.**    FACTUAL AND PROCEDURAL BACKGROUND...........................................1

        **A.**    Procedural History ................................................1

        **B.**    Description of the Action................................................4

        **C.**    Reasons for Settlement ................................................6

    **III.**    ARGUMENT................................................................7

        **A.**    Standard for Preliminary Approval................................................7

        **B.**    Terms of the Settlement and Proposed Schedule of Events ......................9

        **C.**    Benefits of the Settlement................................................10

        **D.**    The Settlement Is Presumed to Be Fair and Reasonable and Was the Result of Arm's Length Negotiations ......................................................11

        **E.**    The Stage of the Proceedings Supports Preliminary Approval of Settlement ................................................................12

        **F.**    Certification of Settlement Class ................................................13

            **1.**    Standards for Class Certification ................................................13

            **2.**    The Requirements of Rule 23(a) Are Satisfied...........................14

                 **(a)**    Rule 23(a)(1): The Members of the Settlement Class Are So Numerous that Joinder Is Impracticable    15

                **(b)**    Rule 23(a)(2): There Are Questions of Law or Fact Common to the Members of the Class    16

                **(c)**    Rule 23(a)(3): The Claims of Lead Plaintiffs Are Typical of Those of the Class    17

                **(d)**    Rule 23(a)(4): The Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Members of the Settlement Class    18

            **3.**    The Requirements of Rule 23(b)(3) Are Satisfied...........................19

                 **(a)**    Common Questions Predominate    19

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

ii

**(b)**     A Class Action Is Superior to Numerous Individual Actions          20

**4.**     Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g) ............................................................................................21

**G.**     The Court Should Approve the Form and Plan of the Notices to the Class ...........................................................................................................22

**CONCLUSION** ..............................................................................................................24

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

iii

# TABLE OF AUTHORITIES

**Cases**

*Alfus v. Pyramid Tech. Corp.,* 764 F. Supp. 598, 606 (N.D. Cal. 1991) .......................................18

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ...........................................13, 14, 15, 18, 19, 21

*Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).......................15

*Barone v. Safway Steel Products, Inc.*, No. CV-03-4258(FB), 2005 WL 2009882, at *6 (E.D.N.Y Aug. 23, 2005) ...........................................................................................................................23

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979).............................10

*Blackie v. Barrack*, 542 F.2d 891, 902 (9th Cir. 1975)..........................................................16, 20

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992)....................10

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ..............................................8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).......................................................14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F. 2d 939 (9th Cir. 1981)...............................................................................................................................13

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)....................15

*In re Activision Sec. Litig.*, 621 F. Supp. 415, 429-30 (N.D. Cal. 1985) .......................................20

*In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 153-54 (S.D. Cal. 1994).......................15

*In re AST Research Sec. Litig.*, No. CV 94-1370, 1994 U.S. Dist. LEXIS 20850, *7 (C.D. Cal. Nov. 10, 1994) ......................................................................................................................17

*In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992) ..................................................................................................................……15, 20, 21

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) ...........................................13

*In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) ......................................15, 18

*In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002) ...................19

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ......................................................................................................11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901 (All Cases), 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) ......................................................12

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) .......................23

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003)....22

*In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) .......................................18

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

iv

*In re Itel Sec. Litig.*, 89 F.R.D. 104, 111 (N.D. Cal. 1981)................................................15

*In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 807 (S.D. Cal. 1990) ........................21

*In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001)....................18

*In re Seagate Tech. II Sec. Litig.,* 843 F. Supp. 1341, 1350 (N.D.Cal. 1994) ...............................13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)........................8, 9

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988) ..................................................................................................................17

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ...............................18

*Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1461 (S.D. Cal. 1988)........................................19

*McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211 (1994)..................................................................7

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ........................................................................................................................11

*Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987) ........................................................7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1992) ......................7, 8

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ...........................23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ........................................................20

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ...................................................11

*Schaefer v. Overland Express Family of Funds,* 169 F.R.D. 124, 128-29 (S.D. Cal. 1996) .........17

*Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 132716, at *7 (C.D. Cal. July 3, 1990)...............................................................................................................................17

*Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985) ........................................................17

*Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) ...............................10

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) ................................10

*United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401 (1977) ........................................................7

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ..............................................7

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987)..................................................20

*Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)............................................17, 21

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970).......................10

*Williams v. First Nat'l Bank*, 216 U.S. 582, 594 (1910)................................................................7

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                        v
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

*Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ......................................................11

*Yamner v. Boich*, No. C-92-20597, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ......................................................................................................................................15

## Statutes

15 U.S.C. § 78z1(a)(7) ............................................................................................................22

## Other Authorities

5 James Wm. Moore, *Moore's Federal Practice,* 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001)..8

7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.92 at 407 (4th ed. 2008)...8

Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992) ......11

Manual for Complex Litigation (Fourth) §§ 21.632-21.633 at 320-321 (2004)............................8

Manual For Complex Litigation (Third) § 30.42 (1995) ............................................................11

## Rules

Fed. R. Civ. P. 23(a)(1)............................................................................................................15

Fed. R. Civ. P. 23(a)(2)............................................................................................................16

Fed. R. Civ. P. 23(b)(3)............................................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................23

Fed. R. Civ. P. 23(e) ................................................................................................................23

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................................21

Fed. R. Civ. P. 23(g)(1)(B) .......................................................................................................22

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                    vi
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

**ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

Whether the Stipulation of Settlement dated June 4, 2010 ("Stipulation") is sufficiently within the range of possible approval to warrant preliminary approval.

Whether the proposed form and manner of providing notice of the proposed settlement to the Class should be approved.

Whether the Class should be certified for settlement purposes.

Whether the Court should set a Fairness Hearing to determine whether the Settlement proposed by the Stipulation should be approved as fair, reasonable, and adequate and whether Judgment approving the Settlement should be entered.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Art Landesman and Loren Swanson ("Lead Plaintiffs") respectfully submit this Unopposed Motion for Preliminary Approval of Settlement requesting that the Court preliminarily approve the Settlement, approve the form and mailing of the Notice of Pendency and Proposed Settlement of Class Action ("the Notice"), and direct publication of the Summary Notice.[1] This Settlement is made between Lead Plaintiffs Art Landesman and Loren Swanson, on behalf of the Class, and Defendants. *See* Miller Decl., Ex. 1.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Procedural History

The first complaint in this case, *Watkins v. ShoreTel, Inc. et al.,* 08-cv-00271-CRB, was filed in the Northern District of California on January 15, 2008 by William Watkins, individually and on behalf of all Persons or entities that purchased or otherwise acquired ShoreTel securities pursuant or traceable to the Company's July 3 2007 IPO ("the Offering"). Subsequently, on

---

[1]Capitalized terms used herein are intended to have the same meaning assigned in the Stipulation. *See* Declaration of Kim E. Miller In Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Miller Decl."), Ex. 1 (Stipulation). All cited provisions of the Stipulation shall hereinafter be referred to as "¶__."

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1

January 29, 2008, the related case *Kelley v. ShoreTel, Inc. et al.*, 08-cv-00683, was filed in the Northern District of California. The cases both alleged violations of Sections 11 and 15 of the Securities Act of 1933; the Kelley Complaint additionally alleged violations of Section 12(a)(2) of the Securities Act. On April 25, 2008, Judge Breyer appointed Loren Swanson and Art Landesman as Lead Plaintiffs, approved their selection of Kahn Swick & Foti, LLC ("KSF")[2] as Lead Counsel, and consolidated the cases under case number 08-cv-00271 as *In re ShoreTel, Inc. Securities Litigation*. On June 27, 2008, Lead Plaintiffs filed the Consolidated Amended Class Action Complaint ("CAC"). On August 26, 2008, the ShoreTel Defendants and Underwriters separately moved to dismiss the CAC and Plaintiffs opposed these motions on November 12, 2008. On January 6, 2009 both the ShoreTel Defendants and the Underwriters submitted reply memoranda. Following a hearing on January 29, 2008, Judge Breyer issued an Order dated February 2, 2009 granting Defendants' motions to dismiss in part and denying them in part, and permitting Plaintiffs to replead ("February 2 Order").

After extensive further research and investigation, and specifically consultation with an economic expert regarding loss causation and the timing and significance of the alleged stock drops, issues of particular concern to the Court, on March 2, 2009, Lead Plaintiffs filed the Second Consolidated Amended Complaint ("Complaint").[3] On June 1, 2009 ShoreTel and the Individual Defendants filed a motion to dismiss the SAC, in which Underwriter Defendant J.P. Morgan joined. Defendants argued that the SAC failed to address the Court's concerns about the First Amended Complaint; that on its face the Second Amended Complaint demonstrated a negative causation defense; that the SAC failed to adequately allege loss causation; and that Lead Plaintiffs' allegations regarding financial metrics, receivable allowance, and demonstration products should be dismissed because they failed to meet the bar set by the Court for showing that the statements were materially untrue.

On June 25, 2009 Lead Plaintiffs filed a memorandum in opposition to Defendants'

---

[2] At the time of appointment as Lead Counsel, KSF was known as Kahn Gauthier Swick, LLC.

[3] The First and Second Amended Complaints are discussed in greater detail in the Stipulation (Miller Decl. at Ex. 1), incorporated by reference herein.

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

2

1   motion to dismiss the SAC. Lead Plaintiffs argued that they were not required to plead loss

2   causation and that Defendants had failed to meet the burden of proof for negative causation; that

3   the SAC remedied the deficiencies of the First Amended Complaint; that the September 27, 2007

4   and January 7, 2008 disclosures and the January 28, 2008 conference call established causation

5   adequate to defeat an affirmative defense of negative causation; and that Defendants made

6   materially false and misleading statements regarding the monitoring of key financial metrics,

7   accounts receivable allowance, and demonstration products.

8       On July 24, 2009 ShoreTel and the Individual Defendants filed a reply memorandum in

9   support of their motion to dismiss the SAC. Defendants argued that Lead Plaintiffs had misstated

10   the applicable pleading standards; that Lead Plaintiffs had failed to show that the SAC did not

11   demonstrate on its face an affirmative defense of negative causation; and again that Lead

12   Plaintiffs allegations about statements regarding the monitoring of key financial metrics,

13   accounts receivable allowance, and demonstration products should be dismissed. The parties

14   appeared before the Court on July 31, 2009 for a hearing on the motion to dismiss. On August

15   19, 2009, the Court issued an order ("August 19 Order") which denied Defendants' motion to

16   dismiss in large part.

17       Following status conferences and extended discovery proceedings, Lead Counsel and

18   Counsel for ShoreTel, the Individual Defendants, and Underwriter Defendant J.P. Morgan

19   agreed to mediation before retired United States District Judge, the Honorable Daniel Weinstein.

20   The mediation occurred on February 12, 2010 at a mediation center in Northern California. The

21   mediation was attended by counsel for all parties. Following extensive presentations and

22   protracted arms-length negotiations, facilitated by Judge Weinstein, the parties reached an

23   agreement in principle to settle the Litigation as to all Defendants and all claims. The proposed

24   settlement was subject to confirmatory discovery and court approval. Thereafter, ShoreTel made

25   an initial production of documentation for review by Lead Counsel, and following a meet and

26   confer, an additional production of documents. Lead Counsel reviewed and analyzed the

27   documents and confirmed the fairness, reasonableness, and adequacy of the proposed settlement.

28

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

3

### B.  Description of the Action

This is a class action on behalf of the purchasers of ShoreTel common stock pursuant to the July 3 2007 IPO of 9.085 million shares of common stock priced at $9.50 per share.[4] In connection with this Offering, Defendants raised gross proceeds of at least $86.3075 million.

ShoreTel, the Individual Defendants, and the Underwriter Defendants are each charged with including, or allowing the inclusion of, materially untrue or misleading statements in the Company's Prospectus or omitting information necessary to keep the statements made in the Company's Prospectus from being misleading, in connection with the Offering in violation of the Securities Act.

ShoreTel and its subsidiaries provide switch-based Internet protocol telecommunications systems primarily for domestic enterprises. ¶16.[5] The Complaint alleges that Defendants, driven by their desire to generate revenue for the Company's upcoming IPO, negligently embarked upon a plan to precipitate sales at any cost by granting extended payment terms and credit to customers, contrary to ShoreTel's stated policies, and improperly recognizing revenue on the same. ¶¶24-32. Defendants' fervor to accelerate the pace and volume of the Company's sales led to their negligence in failing to discover a number of undisclosed material problems existing at the time of IPO, including but not limited to the Company's maintenance of its allowance for bad debts (¶¶40-41), and its failure to adhere to stated policies regarding revenue recognition and extension of net payment terms and credit (¶¶24-32) – problems which would have been easily uncovered had Defendants performed a meaningful due diligence investigation as required. By failing to disclose these facts to the public, Defendants were able to misleadingly report a tripling of the Company's revenues in just two years. ¶20.

As a result of Defendants' negligence, ShoreTel's IPO Registration Statement contained a number of materially untrue and misleading statements and omissions regarding the Company's growth (¶¶20-23), bad debt allowance (¶¶40-45), extension of payment terms and associated revenue recognition practices (¶¶24-30), company credit and associated revenue

---

[4] The facts relied upon in this section are gathered from the Complaint.
[5] All "¶___" refer to paragraphs of the Complaint.

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

4

1   recognition practices (¶¶31-32), and compliance with GAAP and SEC rules (¶¶49-55). In

2   addition, the Complaint alleged that the Registration Statement contained materially untrue and

3   misleading statements and omissions regarding the ShoreTel's monitoring of key financial

4   metrics (¶¶33-39) and the Company's demonstrating products and associated accounting

5   practices (¶¶46-48).[6]

6       With respect to these allegations,[7] the Complaint charges that: Defendants falsely

7   represented that ShoreTel's growth was "driven by increased demand for IP telecommunications

8   systems from new enterprise customers," when, in truth, the Company experienced exaggerated

9   growth as a result of forceful sales tactics and exhausted its customer base to book sales prior to

10  the IPO (¶¶20, 23); Defendants were improperly decreasing the allowance for doubtful accounts

11  contrary to the statements in the Registration Statement that the allowance would "fluctuate

12  based upon changes in revenue levels [and] accounts receivable"; Defendants falsely represented

13  that ShoreTel's "[p]ayment terms generally range from net 30 to net 60 days" and that "revenue

14  is recognized when the payments become due[,]" when, in actuality, the Company booked

15  revenue as soon as an agreement was made with the customer, regardless of the customer's

16  ability or intention to pay (¶26); and Defendants falsely represented that "we defer all revenue

17  from the arrangement until payment is received and all other revenue recognition criteria have

18  been met" if a customer is not creditworthy, when, to the contrary, credit at ShoreTel was

19  granted freely and without regard to customers' credit worthiness (¶¶31-32).

20      Three months after the IPO, investors began to learn the truth about the Company

21  through a series of partial disclosures on September 27, 2007, January 7, 2008, and January 29,

22  2008. ¶¶56-75. Each disclosure signaled to investors that the foregoing representations and

23  omissions in the Registration Statement were materially false and misleading when made,

24  culminating on January 29, 2008, when ShoreTel's true financial condition was fully revealed.

25  *Id.* During this period, the value of ShoreTel stock fell from a close of $15.68 on September 26,

26  _____

27  [6] Pursuant to the Court's August 19 Order, these allegations of the Complaint were dismissed.

    [7] For the sake of brevity, Plaintiffs have refrained from more thoroughly detailing the substance
28  of those claims not sustained by the Court's August 19 Order.

Notice of Motion and Lead Plaintiffs' Unopposed Motion                    5
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

2007, the day before the first partial disclosure, to close over 67% lower at $5.04 on January 30, 2008. ¶12. The considerable loss of equity to shareholders during such a compressed time period stands in stark contrast to Defendants' unlawful gains of over $86 million in connection with the IPO. *See* ¶1.

### C.   Reasons for Settlement

Lead Plaintiffs, by and through Lead Counsel, litigated this case and engaged in arm's length negotiations with counsel for Defendants based upon a thorough understanding of the strengths and weaknesses of the claims alleged. The negotiations included formal mediation before an experienced and respected mediator. Ultimately, these efforts toward resolution were successful in that they led to the Stipulation. Lead Plaintiffs extensively investigated their allegations, including interviews of key witnesses including a number of former employees and third parties, extensive review of public documents including all of the Company's financial and SEC filings, consultation with damages and economic experts regarding loss calculation and causation, and targeted confirmatory discovery. Based on this investigation, Lead Plaintiffs entered into the Stipulation with a detailed understanding of the strengths and weaknesses of their claims and the damages suffered by the Class. Through the briefing on the motions to dismiss, including two separate and in-depth rounds of motion briefing and two oral arguments on those motions, the mediation process, and confirmatory discovery, Lead Plaintiffs are able to assess the viability of the defenses offered by the Defendants. The Stipulation represents a significant all-cash compensation for the Class and will eliminate the substantial risk that continued litigation may result in a smaller or possibly no recovery at all.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiffs in the case. Nevertheless, Defendants concluded that it is desirable to fully and finally resolve this Litigation in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the Litigation limits further expense and inconvenience with respect to matters at issue in this case. Defendants have also taken into account the uncertainty and risks inherent in any litigation. Based on this assessment, Defendants determined that it is desirable and beneficial to settle this Litigation as set forth in the

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

6

1    Stipulation.

2        Lead Plaintiffs and Lead Counsel submit that the proposed Stipulation is sufficiently

3    within the range of possible approval to warrant granting this motion for preliminary approval of

4    the Settlement.

5        III.    **ARGUMENT**

6            A.    **Standard for Preliminary Approval**

7        Federal Rule of Civil Procedure 23(e) provides that before a class action may be

8    dismissed or compromised, the compromise must be granted judicial approval and notice of the

9    proposed dismissal or compromise must be provided to the class in a manner directed by the

10   Court. The decision of whether to approve a proposed settlement is within the discretion of the

11   Court. Evaluation of the criteria for settlement is guided by the realization that settlement of class

12   actions is strongly favored. *See, e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401

13   (1977); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1992). It is widely

14   agreed that "there is an overriding public interest in settling and quieting litigation," and this is

15   "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

16   Cir. 1976), citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 594 (1910). The Ninth Circuit has

17   held that:

18               [T]he court's intrusion upon what is otherwise a private consensual
19               agreement negotiated between the parties to a lawsuit must be limited to
                 the extent necessary to reach a reasoned judgment that the agreement is
20               not the product of fraud or overreaching by, or collusion between, the
                 negotiating parties, and that the settlement, taken as a whole, is fair,
21               reasonable and adequate to all concerned.

22   *Officers for Justice*, 688 F.2d at 625. Indeed, the promotion of fair, adequate and reasonable

23   settlements is a fundamental tenet of litigation in the federal courts. *See, e.g., Nelson v. Bennett*,

24   662 F. Supp. 1324, 1334 (E.D. Cal. 1987); *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211

25   (1994).

26       As a leading authority on class action litigation has explained, "[s]ettlement of complex

27   litigation is encouraged by the courts and favored by public policy. Securities suits readily lend

28   themselves to compromise, because of the notable unpredictability of result and the potential for

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                      7
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1   litigation spanning up to a decade or more." 7 Alba Conte & Herbert B. Newberg, *Newberg on*

2   *Class Actions* § 22.92 at 407 (4th ed. 2008) (internal footnote omitted).

3          According to the Manual for Complex Litigation, the process for approving a settlement

4   in the class action context is as follows:

5              Review of a proposed class action settlement generally involves two
              hearings. First, counsel submit the proposed terms of settlement and the
6              judge makes a preliminary fairness evaluation . . . Once the judge is
              satisfied as to the certifiability of the class and the results of the initial
7              inquiry into fairness, reasonableness, and adequacy of the settlement,
              notice of a formal Rule 23(e) hearing is given to the class members.
8

9   *See* Manual for Complex Litigation (Fourth) §§ 21.632-21.633 at 320-321 (2004).

10         Preliminary approval of a class action settlement does ***not*** require the Court to make a

11  final determination that the settlement is fair, reasonable and adequate. Rather, that decision is

12  made only at the final approval stage, after notice of the settlement is provided to class members

13  and they have had an opportunity to voice their views or to exclude themselves from the

14  settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice,* 23.83[1], at 23-336.2 to 23-339

15  (3d ed. 2001). Thus, when considering a potential settlement, the Court need not reach ultimate

16  conclusions on issues of fact and law underlying the merits of the dispute. As the Ninth Circuit

17  aptly noted:

18             [T]he settlement or fairness hearing is not to be turned into a trial or
              rehearsal for trial on the merits. Neither the trial court nor this court is to
19             reach any ultimate conclusions on the contested issues of fact and law
              which underlie the merits of the dispute, for it is the very uncertainty of
20             outcome in litigation and avoidance of wasteful and expensive litigation
              that induce consensual settlements. The proposed settlement is not to be
21             judged against a hypothetical or speculative measure of what ***might*** have
              been achieved by the negotiators.
22

23  *Officers for Justice*, 688 F.2d at 625 (citations omitted) (emphasis in original). For preliminary

24  approval of a settlement to be warranted, the Court must find that the proposed settlement falls

25  within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

26  1080 (N.D. Cal. 2007). In other words, could the proposed settlement potentially be found "fair,

27  adequate, and reasonable," so that notice may be given to the class and a hearing for final

28  approval can be scheduled. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                          8
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1  Where the proposed settlement is within the range of possible approval, "the next step is the

2  fairness hearing." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.

3       Here, as detailed below, the proposed Settlement satisfies the standard for preliminary

4  approval as it is within the range of possible approval and there are no grounds to doubt its

5  fairness or adequacy.

6                    **B.    Terms of the Settlement and Proposed Schedule of Events**

7       The Settling Parties have entered into an agreement which resolves the Litigation as to

8  ShoreTel, the Individual Defendants, and Underwriter Defendant J.P. Morgan and provides for

9  dismissal of the allegations as to Underwriter Lehman Brothers Inc. The Settlement provides for

10  a benefit to the Class in the amount of Three Million Dollars ($3,000,000) in cash.[8] *See* Miller

11  Decl., Ex. 1 at ¶ 2.1. If the Court grants preliminary approval of this Settlement, it will be

12  necessary to set a hearing date for final approval of the Settlement. *See Id. at* Ex. A, (Order

13  Preliminarily Approving Settlement and Providing for Notice) (the "Notice Order"). The Settling

14  Parties request that the Court select a final hearing date that provides enough time for the Notice

15  to be disseminated to the Class, to receive any comments concerning the Settlement from the

16  Members of the Class and for Lead Plaintiffs' Lead Counsel to submit their papers in support of

17  final approval of the Settlement as well as for reimbursement of fees and expenses.

18       Once the Notice Order has been signed, Lead Plaintiffs respectfully request that the Court

19  set the following schedule for key events pertaining to the proposed Settlement:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Notice Order Signed | Day 1 |
| CAFA Notice to be Issued | Day 10 |
| Deadline for Mailing the Notice and the Proof of Claims and Release Form to Settlement Class Members | Day 14 (*See* Notice Order at ¶ 5(a)) |
| Publishing Summary Notice in *Investor's Business Daily* and *via* internet newswire | Day 14 (*See* Notice Order at ¶ 5(b)) |

---

[8]      "Settling Parties" refers to Lead Plaintiffs and all Defendants.

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB                    9

| | |
|---|---|
| Filing of Papers in Support of Settlement, Plan of Allocation and application of Plaintiffs' Lead Counsel for attorney fees and expenses | 35 Days Before Final Approval Hearing (*See* Notice Order at ¶ 14) |
| Deadline for Plaintiffs' Lead Counsel to File Affidavit of Notice Mailing and Publication | 35 Days Before Final Approval Hearing (*See* Notice Order at ¶ 5(c)) |
| Deadline for submitting exclusion requests or objections | 28 Days Before Final Approval Hearing (*See* Notice Order at ¶¶ 9, 11) |
| Deadline for Plaintiff's Lead Counsel and/or Defendants' Counsel to file and serve materials responding to any objection filed | 14 Days Before Final Approval Hearing (*See* Notice Order at ¶ 14) |
| Final Approval Hearing Date | Day 74 (*See* Notice Order at ¶ 3) |
| Deadline for Class Members' Submission of Proof of Claim and Release Forms | Day 90 (*See* Notice Order at ¶ 8) |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to the Class Members with regard to their Settlement rights. *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993).

### C.   Benefits of the Settlement

The ability to avoid the risk, uncertainty, expense, complexity and likely duration of further litigation should be considered by the Court in reviewing this motion.

It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted). While Lead Plaintiffs believe that the claims against Defendants in this lawsuit have merit, experience shows that success in litigation can never be deemed a certainty. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971), *cert. denied*, 404 U.S. 871 (1971).

Lead Plaintiffs and Lead Counsel recognize the significant risks and uncertainty involved in pursuing Plaintiffs' claims through summary judgment, trial and subsequent appeals. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979) (reversing $87 million judgment after trial), *cert. denied*, 444 U.S. 1093 (1980); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified by*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409

Notice of Motion and Lead Plaintiffs' Unopposed Motion                          10
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

U.S. 363 (1973) (overturning $145 million judgment after years of appeals). Moreover, Lead Plaintiffs and Lead Counsel are mindful of the issues of proof under, and possible defenses to, the violations of securities laws alleged.

Under these circumstances, the proposed Settlement balances the risks, costs and delay inherent in complex cases evenly with respect to all parties. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval.

### D. The Settlement Is Presumed to Be Fair and Reasonable and Was the Result of Arm's Length Negotiations

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("[w]here 'the Court finds that the settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the settlement will enjoy a presumption of fairness'"); *See also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992); Manual For Complex Litigation (Third) § 30.42 (1995). Thus, many courts recognize that the opinion of experienced counsel is entitled to considerable weight in evaluating the fairness of a settlement when the result was achieved through arm's length negotiations. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).

As illustrated above, the proposed Settlement is the product of thorough arm's length negotiations that occurred between counsel continuing through February 12, 2010, when an agreement in principle was reached. Moreover, the Settlement was reached at a point in the Litigation where Lead Plaintiffs possessed a solid understanding of the strengths and weaknesses of the claims alleged. Lead Plaintiffs' Counsel conducted an extensive investigation with the assistance of private investigators and other consultants. In addition, significant relevant information was publicly available and thoroughly analyzed by Lead Counsel. Furthermore,

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

11

1   Lead Counsel conducted a thorough review of discovery documents produced by ShoreTel

2   following mediation, confirming the fairness, reasonableness, and adequacy of the Settlement.

3   Prior to this production, Lead Plaintiffs and counsel for ShoreTel met and conferred and agreed

4   to a set of relevant criteria target the review to relevant documentation during the relevant time.

5   After review of an initial production of documents, there followed a second meet and confer

6   regarding confirmatory discovery, and additional documents were produced. Lead Counsel

7   reviewed all of the produced documents in order to confirm the fairness, reasonableness, and

8   adequacy of the Settlement.

9        As a result of the negotiations, the Parties, who were represented by counsel with

10  significant experience in class action litigation, reached an agreement which they believe is fair

11  to the named Parties and the Class. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,

12  MDL Docket No. 901 (All Cases), 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10,

13  1992) (finding the opinion of competent and experienced counsel, that the proposed settlement

14  represented the most beneficial result for their respective clients, to be a compelling factor in

15  favor of approval). Moreover, the record is devoid of any evidence suggesting that the Settlement

16  is not the product of informed arm's length negotiations by experienced counsel and, therefore,

17  warrants preliminary approval.

18        **E.**    **The Stage of the Proceedings Supports Preliminary**
                     **Approval of Settlement**

19

20        Prior to and during the Litigation, Lead Counsel conducted an extensive investigation

21  concerning this matter. These efforts included, but were not limited to: (a) reviewing and

22  analyzing ShoreTel's SEC filings and public disclosures; (b) utilizing the services of a private

23  investigator and interviewing witnesses with knowledge concerning the allegations in the

24  pleadings; (c) consulting damage experts as well as expert economists on causation issues; (d)

25  researching applicable law regarding the claims asserted and potential defenses thereto; and (e)

26  reviewing thoroughly the confirmatory discovery produced by Defendants to confirm the

27  fairness, reasonableness and adequacy of the settlement.

28        Thus, as a result of the foregoing, Lead Plaintiffs believe that the action reached a stage

Notice of Motion and Lead Plaintiffs' Unopposed Motion          12
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1    where the parties and the Court are in a position to "fully evaluate the strengths, weaknesses, and

2    equities of the parties' positions." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.

3    1980), *aff'd,* 661 F. 2d 939 (9th Cir. 1981). In addition, only after Lead Plaintiffs demonstrated

4    their commitment, willingness and ability to prosecute the case vigorously, was a Settlement

5    reached for $3,000,000 in cash. Therefore, the Court should find that this factor weighs in favor

6    of granting preliminary approval of the Settlement.

### F.    Certification of Settlement Class

#### 1.    Standards for Class Certification

9            Since a class has not been certified in this case, Lead Plaintiffs also request that the Court

10   certify a shareholder class for settlement purposes only. While each class action requirement of

11   Rule 23 of the Federal Rules of Civil Procedure must be satisfied when certifying a class for the

12   purposes of settlement, the proposed Settlement must be taken into account as part of the overall

13   analysis. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). In fact, courts throughout the country

14   have granted similar requests since the criteria for class certification may be easily met when the

15   class has an overriding common interest in obtaining the recovery proposed by a settlement. *Id.*

16   Certain courts have even noted that "the temporary settlement class [is] nothing more than a

17   tentative assumption indulged in by the court to facilitate the amicable resolution of the

18   litigation, rather than as some sort of conditional class ruling under Rule 23 criterion." *In re Beef*

19   *Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) ("A number of trial judges, experienced

20   in complex litigation, have found it appropriate to establish a pre-certification settlement class.").

21   Accordingly, doubts as to whether to certify a class action should be resolved "in favor of

22   allowing the class to go forward." *In re Seagate Tech. II Sec. Litig.,* 843 F. Supp. 1341, 1350

23   (N.D.Cal. 1994). In determining class certification, "the question is not whether the plaintiff or

24   plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met."

25

26

27

28

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                          13
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).[9]

2            Certification is appropriate here because the claims asserted are based on uniform

3    misrepresentations and omissions that impacted investors similarly. Moreover, all parties agree

4    to certification of the Class for settlement purposes only, which is defined as all Persons and

5    entities that purchased the common stock of ShoreTel pursuant or traceable to ShoreTel's Initial

6    Public Offering Prospectus and Registration Statement, or on the open market from July 3, 2007

7    through January 29, 2008, inclusive. Excluded from the Class are Defendants, the officers and

8    directors of the Defendants at all relevant times, members of their immediate families and their

9    legal representatives, heirs, successors or assigns, and any entity in which the Defendants have or

10   had a controlling interest. Also excluded from the Class are those Persons who timely and validly

11   request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of

12   Class Action. *See* Miller Decl., Ex. 1 at ¶ 1.4.

13           In this instance, the Court is well within its authority to certify the Class for settlement

14   purposes since it can be demonstrated that the proposed class meets the four prerequisites of

15   Rule 23(a) of the Federal Rules of Civil Procedure – numerosity, commonality, typicality, and

16   adequacy of representation – and one of the three requirements of Rule 23(b). *Amchem,* 521 U.S.

17   at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we

18   emphasize, are not impractical impediments – checks shorn of utility – in the settlement class

19   context.").

20                            **2.    The Requirements of Rule 23(a) Are Satisfied**

21           The criteria for class certification are set forth in Rule 23(a):

22                   One or more members of a class may sue or be sued as representative

23           parties on behalf of all only if (1) the class is so numerous that joinder of
             all members is impracticable, (2) there are questions of law or fact

24           common to the class, (3) the claims or defenses of the representative
             parties are typical of the claims or defenses of the class, and (4) the

25           representative parties will fairly and adequately protect the interests of the

26   _____

27   [9]     The standards for approving a settlement class are the same as those for approving a non-

28   settlement class except that a court need not consider the difficulties likely to be encountered in
     managing the class action. *See Amchem*, 521 U.S. at 619-21.

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                              14
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1   class.

2   *Id.*

3       Courts liberally construe Rule 23 in favor of granting class certification motions in cases

4   involving alleged violations of the federal securities laws. *Yamner v. Boich*, No. C-92-20597,

5   1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("the Ninth Circuit favors a

6   liberal use of class actions to enforce the federal securities laws") (citation omitted). As

7   demonstrated below, each of the requirements of Rule 23(a) is satisfied for the purposes of

8   certifying this Class.

        **(a)  Rule 23(a)(1): The Members of the Settlement Class
9               Are So Numerous that Joinder Is Impracticable**

10      Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

11  "impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability does not mean impossibility; only that

12  it would be difficult or inconvenient to join all members of the class. *See Harris v. Palm Springs

13  Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is no fixed number of class

14  members that either compels or precludes class certification. *Arnold v. United Artists Theatre

15  Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, "[a] reasonable estimate of the number of

16  purported class members satisfies the numerosity requirement of Rule 23(a)(1)." *In re Badger

17  Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992). Under this

18  standard, classes consisting of just 25 members have been held large enough to justify

19  certification. *See In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994). Cases

20  involving nationally traded securities are generally assumed to satisfy the numerosity

21  requirement of Rule 23. *Id.*

22      Here, millions of shares of ShoreTel securities were traded during the Class Period. Thus,

23  it is reasonable to presume that these shares were purchased by thousands of investors, making

24  joinder impracticable. *In re Itel Sec. Litig.*, 89 F.R.D. 104, 111 (N.D. Cal. 1981)

25  ("impracticability" occurs, as a presumptive matter, when the class membership reaches the 100-

26  member mark); *see also In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 153-54 (S.D.

27  Cal. 1994) ("[w]hether or not the Class numbers in the hundreds or in the thousands, joinder is

Notice of Motion and Lead Plaintiffs' Unopposed Motion                    15
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

clearly impractical where a large group of people, dispersed all across the country, are involved"). Therefore, Lead Plaintiffs assert that the numerosity requirement is met.

### (b) Rule 23(a)(2): There Are Questions of Law or Fact Common to the Members of the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has adopted a "common sense approach," holding that the commonality requirement is satisfied where, as here, plaintiffs have alleged a common "course of conduct" based on defendants' statements and/or omissions:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 542 F.2d 891, 902 (9th Cir. 1975).

Here, Lead Plaintiffs contend that common issues of fact and law exist with regard to the following issues:

(i)      whether the federal securities laws were violated by Defendants' alleged acts;

(ii)      whether ShoreTel's Registration Statement and Prospectus were materially untrue and/or misleading or omitted information necessary to ensure that they were not materially untrue and/or misleading;

(iii)      whether the market prices of ShoreTel securities during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and

(iv)      whether members of the Class have sustained damages, and, if so, what is the appropriate measure of damages.

The claims of all Members of the Class arise from a single alleged course of conduct and are all based on the same legal theories. Therefore, Lead Plaintiffs submit that the commonality requirement is met.

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

16

**(c) Rule 23(a)(3): The Claims of Lead Plaintiffs Are Typical of Those of the Class**

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the claims of the class they seek to represent. As the court explained in *United Energy*:

> A plaintiff's claim is typical of the claims of the proposed class members if it is aligned with the claims of other class members. The plaintiff's claim must arise from the same event or course of conduct giving rise to the claims of other class members. Furthermore, the claims must be based on the same legal theory. *In re Unioil Securities Litigation*, 107 F.R.D. 615, 620 (C.D. Cal. 1985). . . The theory behind this prerequisite is that a Plaintiff with typical claims will pursue her own self-interest and advance the interests of class members accordingly.

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). The requirement of typicality does not mean that all claims must be identical or that plaintiffs must seek uniform damage awards. *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986) ("[t]he test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct"). Factual differences do not defeat certification in securities actions where the claims arise from common legal theories. *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985); *In re AST Research Sec. Litig.*, No. CV 94-1370, 1994 U.S. Dist. LEXIS 20850, *7 (C.D. Cal. Nov. 10, 1994) ("[t]ypicality means that the claims or defenses of the proposed class representative must not 'differ significantly from the claims or defenses of the class as a whole'") (quoting *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986)). Thus, the preceding makes clear that typicality generally will be met where the commonality requirement is also met.

Lead Plaintiffs' claims are typical of those of the Class because, like all Class Members, Lead Plaintiffs' claims arise from a common course of conduct and are based on the same legal theories. *See Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 132716, at *7 (C.D. Cal. July 3, 1990). *See also Schaefer v. Overland Express Family of Funds,* 169 F.R.D. 124, 128-29 (S.D. Cal. 1996). As Rule 23(a)(4) makes clear, a lead plaintiff satisfies the typicality factor when claims or defenses of the party or parties representing the class are typical of the claims or

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB                    17

defenses of the other members. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). Moreover, issues related to differences in the amount of damages, the size or manner of purchase, the nature of the purchaser and the date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.,* 764 F. Supp. 598, 606 (N.D. Cal. 1991).

Here, Lead Plaintiffs' claims and the claims of Members of the Class arise from the same alleged conduct. Lead Plaintiffs allege that, just like the other members of the proposed Class, they purchased and/or acquired ShoreTel securities at prices that were artificially inflated because Defendants issued materially misleading statements and/or omitted information necessary to make statements not misleading in violation of the federal securities laws. The evidence required to prove Lead Plaintiffs' claims would establish the same violations by Defendants for every Member of the Class. *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) (finding typicality in securities class action where major issue presented was "whether the Defendants have violated the federal securities laws"). Thus, Lead Plaintiffs have the incentive to prove every element of each cause of action which would be presented by the individual Members of the Class were they to file individual actions. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001). Additionally, Lead Plaintiffs are not subject to any unique defenses that could make them atypical Class Members. Thus, Lead Plaintiffs proffer that the typicality requirement is satisfied.

### (d) Rule 23(a)(4): The Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Members of the Settlement Class

Rule 23(a)(4), regarding the adequacy of representation, entails two showings: (1) that the representative plaintiff's interests are not antagonistic to the other members of the settlement class; and (2) that the representative plaintiff's counsel is qualified, experienced and generally able to conduct the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Cirrus Logic*, 155 F.R.D. at 657; *United Energy*, 122 F.R.D. at 257.

Initially, it is submitted that KSF, Lead Counsel for Lead Plaintiffs, is an eminent law firm representing plaintiffs in securities class actions throughout the nation. This firm and its

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                                     18
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

attorneys have extensive experience in successfully prosecuting such actions and have achieved significant results for their clients and for certified investor classes, as demonstrated by the firm's resume attached to the Miller Decl. at Ex. 2.

As discussed above, Lead Plaintiffs' claims are typical because the allegedly misleading course of conduct by Defendants is common to all of the Class Members. Questions of fact arising from these activities are common to each Class Member, as are questions of law regarding whether Defendants' activities violated the federal securities laws. *See, e.g., In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002) (finding plaintiffs adequate and free of antagonistic interests to the class where they, "as with class member[s], were purchasers of Deutsche Telekom ADSs who were allegedly injured by false and misleading statements about the company's financial situation"). Furthermore, the Stipulation does not evidence any antagonism or disabling conflict between the Lead Plaintiffs and the absent Class Members. *See Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1461 (S.D. Cal. 1988). Therefore, Lead Plaintiffs submit that the adequacy of representation requirement is met.

### 3.   The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), proposed settlement classes must also satisfy one of the subdivisions of Rule 23(b). *Amchem*, 521 U.S. at 708-09. Lead Plaintiffs seek certification of the Class under subdivision (b)(3) of Rule 23, which states:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \*       \*       \*
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### (a)   Common Questions Predominate

As demonstrated above, this Litigation involves both questions of law and fact common to the Class. Common issues need only predominate, and Rule 23(b)(3) does not require total

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                    19
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1   absence of individual issues. *In re Activision Sec. Litig.*, 621 F. Supp. 415, 429-30 (N.D. Cal.

2   1985). As the Ninth Circuit commented in the landmark securities fraud case of *Blackie v.*

3   *Barrack*, "[t]he overwhelming weight of authority holds that repeated misrepresentations of the

4   sort alleged here satisfy the 'common question' requirement." *Blackie*, 524 F.2d at 902.

5       Lead Plaintiffs proffer that there are no significant – let alone predominant – individual

6   issues in this case. Indeed, it is difficult to discern any liability issues not common to Members

7   of the Class. Where, as here, Members of the Class are subject to the same alleged

8   misrepresentations and omissions, and where, as here, it is alleged that Defendants'

9   misrepresentations were part of a common course of conduct, courts routinely hold that common

10  questions predominate and that class certification is appropriate. *See, e.g.*, *In re Badger*

11  *Mountain Irrigation Dist. Sec. Litig*, 143 F.R.D. 693, 701 (W.D. Wash. 1992); *United Energy*,

12  122 F.R.D. at 256; *Unioil*, 107 F.R.D. at 622. Because these issues are common to each Member

13  of the Settlement Class and comprise the Litigation's principle issues, Lead Plaintiffs submit that

14  they clearly predominate in this case.

15          **(b)     A Class Action Is Superior to Numerous**
16                   **Individual Actions**

17      The class action device is also the superior method for resolving the claims in this action.

18  Courts have long recognized that the class action is not only a superior method, but also may be

19  the only feasible method to fairly and efficiently adjudicate a controversy involving a large

20  number of purchasers of securities injured by violations of the securities law. *See Phillips*

21  *Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would

22  have no realistic day in court if a class action were not available"). As the Northern District of

23  California has stated:

24          In practical terms, plaintiffs in the instant case may be economically
            precluded from bringing separate suits and thus be barred access to the
25          judicial system. Maintenance of a class action suit would provide all
            litigants with their 'day in court' without overburdening the judicial
26          system with a multiplicity of lawsuits.

27  *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987).

28      The alternative to certifying the Class for settlement purposes would be to unleash

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                      20
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1   hundreds, if not thousands, of individual actions into the judicial system, which could result in

2   varying adjudications of liability, or risk that many Class Members would be unable to seek

3   redress because they could not afford to proceed on an individual basis. The cost and expense of

4   such individual actions, when weighed against the individual recoveries obtainable, would be

5   prohibitive.

6          Further, certification of the Class for settlement purposes is the superior method for

7   resolving the claims of Lead Plaintiffs and Members of the Class. Without the settlement class

8   device, the Defendants could not obtain a Class-wide release, and therefore would have had

9   little, if any, incentive to enter into the Stipulation. Moreover, certification of the Class for

10  settlement purposes will allow the Settlement to be administered in an organized and efficient

11  manner. Courts have repeatedly affirmed the superiority of class actions in securities cases on the

12  foregoing grounds. *See, e.g.*, *Weinberger*, 114 F.R.D. at 605; *United Energy*, 122 F.R.D. at 258;

13  *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 807 (S.D. Cal. 1990); *Badger Mountain*, 143

14  F.R.D. at 701. This is true even when the parties seek class certification only for the purposes of

15  settlement. *Amchem*, 521 U.S. at 620. Therefore, Lead Plaintiffs aver that resolution of the

16  claims against the Defendants through the proposed Class is plainly superior to any other

17  available method of resolution.

18         For all of the foregoing reasons, this Court should find that this Class meets the

19  requirements of both Fed. R. Civ. P. 23(a) and 23(b) and should provisionally certify the Class

20  for settlement purposes.[10]

21              **4.  Lead Counsel Should Be Appointed Class Counsel**
                     **Under Rule 23(g)**

22

23         Rule 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel."

24  Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel satisfies the requirements of Rule 23(g) and should be

25  appointed as Class Counsel. As discussed above, KSF has fairly and adequately represented the

26  Class, and will continue to do so. Proposed Class Counsel are knowledgeable about the

27  ─────────────

28  [10]    The Stipulation provides that Defendants reserve their right to contest and challenge
        certification of the Class on any and all grounds in the event that the Settlement is not approved.

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                    21
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

applicable law, are experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims here, and have committed substantial resources to representing the Class. *See* Fed. R. Civ. P. 23(g)(1)(B).

### G.    The Court Should Approve the Form and Plan of the Notices to the Class

The Court should also approve the form and content of the proposed Notice and Summary Notice. *See* Exhibits A-1 and A-3 annexed to the Stipulation. Each is written in clear, straight-forward language, and employs a format that clearly sets out relevant information. Consistent with Rules 23(c)(2)(B) and 23(e)(B), the Notice objectively and neutrally apprises Members of the Class of the nature of the action, the definition of the Class sought to be certified, the claims and issues, that Members of the Class may enter an appearance through counsel if desired, that the Court will exclude from the Class any Member of the Class who requests exclusion (and sets forth the procedures and deadline for doing so), and the binding effect of a judgment on Members of the Class under Rule 23(c)(3).

The Notice also satisfies the separate disclosure requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"). The Notice: (i) states the amount of the settlement proposed to be distributed to the parties, determined in the aggregate and on an average per share basis; (ii) provides a statement from each party concerning the issues about which the parties disagree; (iii) states the maximum amount of attorneys' fees and expenses (both on an aggregate and average per share basis) that Plaintiff's Lead Counsel will seek, with a brief explanation supporting such fees and expenses; (iv) provides the names, addresses and a toll-free telephone number for Lead Counsel, who will be available to answer questions from Members of the Class; (v) provides a brief statement explaining the reasons why the parties are proposing the Settlement; and (vi) includes a cover page summarizing all of this information. *See* 15 U.S.C. § 78z1(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003) (discussing PSLRA notice requirements and approving notice where "cover page" was actually two pages).

Additionally, both the proposed Notice and Summary Notice disclose the date, time, and

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

22

location of the Settlement Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement, Plan of Allocation, or attorneys' fees and expenses to be sought by Lead Counsel. These disclosures are thorough and should be approved by the Court. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice which identified the settlement terms, the plan of allocation, the estimated potential recovery at trial, the maximum request for attorney's fees and the contact information of relevant attorneys).

Rule 23(c)(2)(B) requires certified classes to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." This applies to "a settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e). The proposed notice plan readily meets these standards. Lead Plaintiffs and Lead Counsel, through an experienced settlement and claims administrator, Garden City Group, Inc., will cause the Notice, including the Plan of Allocation and Proof of Claim form, to be sent by first class mail to every member of the Class who can be identified through reasonable effort. Lead Plaintiffs contemplate that the effectuation of notice will be principally accomplished by using record holder data produced by the transfer agent for ShoreTel, and by reaching out to broker-dealers for last-known names and addresses of potential Members of the Class. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the full Notice, will be published in a widely circulated national business-oriented publication and wire service on or before the date specified in the Notice Order, and the Notice, Summary Notice, and Proof of Claim and Release Form will all be available on the internet *via* a webpage established by the Claims Administrator and identified in the Notices.

Lead Plaintiffs submit that this notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court. *See Barone v. Safway Steel Products, Inc.*, No. CV-03-4258(FB), 2005 WL 2009882, at *6 (E.D.N.Y Aug. 23, 2005); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by

Notice of Motion and Lead Plaintiffs' Unopposed Motion                                                    23
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

1  first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the

2  best notice practicable under the circumstances.'").

3  **CONCLUSION**

4        For the foregoing reasons, Lead Plaintiffs respectfully request that this Court certify the

5  proposed Class for Settlement purposes, grant preliminary approval to the proposed Settlement,

6  approve the forms and methods of notice, and issue the proposed Preliminary Approval Order

7  submitted herewith.

8  Dated: June 4, 2010                       Respectfully submitted,

9                                        /s/ Kim E. Miller

10  Kim E. Miller (178370)
    KAHN SWICK & FOTI, LLC

11  500 5th Ave, Suite 1810
    New York , NY 10110

12  Telephone:   (212) 696-3730

13  Facsimile:   (504) 455-1498

14  Lewis S. Kahn
    Sarah Cate Boone (268813)

15  KAHN SWICK & FOTI, LLC

16  206 Covington Street
    Madisonville, LA 70447

17  Telephone:   (504) 455-1400
    Facsimile:   (504) 455-1498

18  ***Lead Counsel for Lead Plaintiffs***

19  ***and the Class***

20  Reed R. Kathrein (139304)
    HAGENS BERMAN SOBOL

21  SHAPIRO LLP

22  715 Hearst Avenue, Suite 202
    Berkeley, CA 94710

23  Telephone:   (510) 725-3000
    Facsimile:   (510) 725-3001

24  ***Liaison Counsel for Lead Plaintiffs***
    ***and the Class***

25

26

27

28

Notice of Motion and Lead Plaintiffs' Unopposed Motion       24
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

       /s/ Kim E. Miller

Notice of Motion and Lead Plaintiffs' Unopposed Motion
for Preliminary Approval of Settlement and Memorandum
of Points and Authorities in Support - CASE NO. C-08-00271-CRB

25